923 F.2d 284
 Keith W. ZETTLEMOYER, Appellant,
v.
Thomas A. FULCOMER, Superintendent, State Correctional
Institution at Huntingdon, Pennsylvania and
Honorable Leroy S. Zimmerman, Attorney
General of the Commonwealth of
Pennsylvania, Appellees.
 No. 88-5543.
 United States Court of Appeals,
Third Circuit.
 Argued March 30, 1989.
Reargued Oct. 12, 1990.
Decided Jan. 16, 1991.
Rehearing and Rehearing In Banc
Denied March 20, 1991.
 
 Thomas B. Schmidt (argued), Pepper, Hamilton & Scheetz, Harrisburg, Pa., for appellant.
 Richard A. Lewis, Dist. Atty., Todd B. Narvol, Sr. Deputy Dist. Attorney for Dauphin County (argued), Harrisburg, Pa., for appellees.
 Before SLOVITER, GREENBERG, and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 Petitioner Keith W. Zettlemoyer appeals to this court from an order of the United States District Court for the Middle District of Pennsylvania entered May 31, 1988, dismissing his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. We have jurisdiction under 28 U.S.C. Sec. 1291. We will affirm the order of the district court dismissing Zettlemoyer's petition.
 
 I. PROCEDURAL AND FACTUAL HISTORY
 
 2
 Zettlemoyer murdered Charles DeVetsco on October 13, 1980, one week before DeVetsco was to be a witness for the Commonwealth of Pennsylvania at a trial of several felony charges against Zettlemoyer. Two police officers arrested Zettlemoyer, who was heavily armed, after they heard the shots that killed DeVetsco at a railroad yard in Harrisburg in the early morning hours. The unmistakable inference from the evidence is that Zettlemoyer, who knew that DeVetsco was to be a witness at the ensuing trial, kidnapped and executed him so that he could not testify.
 
 
 3
 At the murder trial in the Dauphin County Court of Common Pleas, Zettlemoyer did not contest that he had killed DeVetsco but presented a defense of "diminished capacity." The jury returned a verdict of guilty of first degree murder and on the same day determined that a death sentence should be imposed under 42 Pa.Cons.Stat.Ann. Sec. 9711 (Purdon 1982 & Supp.1990), the germane portions of which provide:
 
 
 4
 (a) Procedure in jury trials.--
 
 
 5
 (1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.
 
 
 6
 (2) In the sentencing hearing, evidence may be presented as to any matter that the court deems relevant and admissible on the question of the sentence to be imposed and shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d) and (e). Evidence of aggravating circumstances shall be limited to those circumstances specified in subsection (d).
 
 
 7
 (3) After the presentation of evidence, the court shall permit counsel to present argument for or against the sentence of death. The court shall then instruct the jury in accordance with subsection (c).
 
 
 8
 ....
 
 
 9
 (c) Instructions to the jury.--
 
 
 10
 (1) Before the jury retires to consider the sentencing verdict, the court shall instruct the jury on the following matters:
 
 
 11
 (i) the aggravating circumstances specified in subsection (d) as to which there is some evidence.
 
 
 12
 (ii) the mitigating circumstances specified in subsection (e) as to which there is some evidence.
 
 
 13
 (iii) aggravating circumstances must be proved by the Commonwealth beyond a reasonable doubt; mitigating circumstances must be proved by the defendant by a preponderance of the evidence.
 
 
 14
 (iv) the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.
 
 
 15
 ....
 
 
 16
 (d) Aggravating circumstances.--Aggravating circumstances shall be limited to the following ...
 
 
 17
 ....
 
 
 18
 (5) The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses.
 
 
 19
 ....
 
 
 20
 (e) Mitigating circumstances.--Mitigating circumstances shall include the following:
 
 
 21
 (1) The defendant has no significant history of prior criminal convictions.
 
 
 22
 (2) The defendant was under the influence of extreme mental or emotional disturbance.
 
 
 23
 (3) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
 
 
 24
 (4) The age of the defendant at the time of the crime.
 
 
 25
 (5) The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution ... or acted under the substantial domination of another person.
 
 
 26
 (6) The victim was a participant in the defendant's homicidal conduct or consented to the homicidal acts.
 
 
 27
 (7) The defendant's participation in the homicidal act was relatively minor.
 
 
 28
 (8) Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.
 
 
 29
 42 Pa.Cons.Stat.Ann. Secs. 9711(a)-(e).
 
 
 30
 After the Court of Common Pleas denied Zettlemoyer's post-trial motions, he filed a direct appeal to the Supreme Court of Pennsylvania which affirmed his conviction and sentence. Commonwealth v. Zettlemoyer, 500 Pa. 16, 454 A.2d 937 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).[1] Zettlemoyer then filed a petition seeking a new trial in the Court of Common Pleas under Pennsylvania's Post-Conviction Hearing Act ("PCHA"), 42 Pa.Cons.Stat.Ann. Secs. 9541-9551, but on August 26, 1985, that court denied the petition without a hearing.[2] Commonwealth v. Zettlemoyer, 106 Dauphin County Repts. 215 (1985). Zettlemoyer appealed from the denial of the petition to the Superior Court which affirmed on July 2, 1986. Commonwealth v. Zettlemoyer, 359 Pa.Super. 631, 515 A.2d 620 (1986). He then sought leave of the Supreme Court of Pennsylvania to appeal, but that application was denied by order dated December 23, 1986. Commonwealth v. Zettlemoyer, 513 Pa. 34, 518 A.2d 807 (1986). Zettlemoyer then filed a petition for a writ of certiorari in the United States Supreme Court on February 13, 1987, but it, too, was denied on April 6, 1987. Zettlemoyer v. Pennsylvania, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987).
 
 
 31
 On July 17, 1987, Zettlemoyer filed his petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania challenging the constitutionality of the Pennsylvania death penalty statute, alleging errors by the trial court, and asserting that he had had ineffective assistance of trial counsel. In the petition Zettlemoyer set forth that he was arrested while heavily armed in the early morning hours of October 13, 1980, when the police officers heard the gun shots. Zettlemoyer admitted being acquainted with DeVetsco and acknowledged that DeVetsco was scheduled to testify against him in criminal proceedings in Snyder County. Zettlemoyer made no claim in the petition that he had not murdered DeVetsco.
 
 
 32
 Zettlemoyer set forth that the Pennsylvania death penalty statute is unconstitutionally mandatory and vague, and unconstitutionally shifts the risk of nonpersuasion because defendants must prove mitigating circumstances by a preponderance of the evidence. He also urged that his trial counsel was ineffective in failing to present competent psychological testimony on the issue, central to his defense, of diminished capacity, and in failing to present psychological testimony at the sentencing phase. He asserted that the trial court improperly instructed the jury that it had no responsibility for imposition of the death penalty and thus violated the holding in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer led to believe that responsibility for determining the appropriateness of the defendant's death rests elsewhere. He further contended that the trial court erred by failing to instruct the jury that if it was unable to agree unanimously that the death penalty should be imposed, it was free to decide by less than a unanimous vote to impose a life sentence under 42 Pa.Cons.Stat.Ann. Sec. 9711(c)(1).[3]
 
 
 33
 The district court dismissed the petition in a memorandum opinion and order. Zettlemoyer v. Fulcomer, No. 87-0993 (M.D.Pa. May 31, 1988).[4] It explained that the Pennsylvania death penalty statute is not unconstitutionally mandatory because it "mandates a sentence of death only after a jury acting with channeled discretion finds that aggravating circumstances outweigh mitigating circumstances." Id. at 20 (citing Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Commonwealth v. Cross, 508 Pa. 322, 496 A.2d 1144 (1985)). The court continued that the statute is not unconstitutionally vague because "[u]nder Pennsylvania law, the Commonwealth has the burden of proving beyond a reasonable doubt every element of the offense in the guilt phase of the trial, as well as proving the aggravating circumstances beyond a reasonable doubt." Zettlemoyer, slip op. at 21. It reasoned that the statute eliminates total arbitrariness and capriciousness and appropriately channels the sentencer's discretion because it "focuses on the circumstances of each individual homicide and individual defendant in deciding whether the death penalty is to be imposed." Id. (quoting Proffitt v. Florida, 428 U.S. 242, 258, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913 (1976)). The court also rejected Zettlemoyer's challenge that the statute impermissibly shifts the risk of nonpersuasion to defendants, citing Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), for the holding that it was proper to place the burden of proving an affirmative defense on the defendant. Zettlemoyer, slip op. at 22.
 
 
 34
 The court rejected Zettlemoyer's argument that his trial counsel was ineffective for not identifying and retaining a psychiatrist or specially-qualified psychologist competent to offer an expert opinion on his ability to form the specific intent to commit first degree murder, as he did not demonstrate prejudice from this omission. Id. at 13 (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) (defendant must show counsel's deficient performance prejudiced defense so that it deprived him or her of a fair judicial proceeding with reliable result)). Likewise, the court found that counsel was not ineffective for failing to recall the psychologist who testified during trial at the sentencing phase because Zettlemoyer's father testified at the sentencing hearing, thus reinforcing his diminished capacity defense in the minds of the jury. Zettlemoyer, slip op. at 30.
 
 
 35
 Finally, the court found that the trial court's charge, when taken in its entirety, "properly explained to the jury the role which they were to play in weighing the aggravating and mitigating circumstances." Id. at 32. Additionally, the court found that the entire charge complied with the requirements of 42 Pa.Cons.Stat.Ann. Sec. 9711(c)(1) because "the court informed the jury that the only possible way it could return a sentence of death would be if the Commonwealth proved beyond a reasonable doubt, and the jury unanimously agreed, that there was an aggravating circumstance and no mitigating circumstances, or that the aggravating circumstances outweighed any mitigating circumstances." Zettlemoyer, slip op. at 32. The court, therefore, dismissed the petition, stating in its order that "any appeal from this order will be deemed frivolous, lacking in probable cause and not taken in good faith." Id. at 35.
 
 
 36
 Zettlemoyer then appealed to this court on June 29, 1988, and we subsequently issued a certificate of probable cause and scheduled oral argument for March 30, 1989. However, on March 27, 1989, the United States Supreme Court granted certiorari in Blystone v. Pennsylvania, 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989), on the question of whether the Pennsylvania death penalty statute is unconstitutional because "it improperly limits the full discretion the sentencer must have in deciding the appropriate penalty for a particular defendant." Accordingly, though we did hear oral argument on March 30, 1989, we deferred decision on the appeal pending disposition of Blystone.
 
 
 37
 On February 28, 1990, the Supreme Court held that the Pennsylvania death penalty statute, notwithstanding its "mandatory" language, satisfies the requirement that a capital-sentencing jury be allowed to consider and to give effect to all relevant mitigating evidence and, therefore, does not violate the Eighth Amendment's proscription against cruel and unusual punishment. Blystone v. Pennsylvania, --- U.S. ----, 110 S.Ct. 1078, 1082, 108 L.Ed.2d 255 (1990). The Court found that the death penalty is not automatically imposed for certain types of murders; rather, "[i]t is imposed only after a determination that the aggravating circumstances outweigh the mitigating circumstances present in the particular crime by the particular defendant, or that there are no such mitigating circumstances." Id. 110 S.Ct. at 1082-83.
 
 
 38
 Following the decision in Blystone, we called for and received additional briefs and heard argument again. In his supplemental brief, Zettlemoyer argues that the Pennsylvania death penalty statute is unconstitutional as applied to him, attempting to distinguish Blystone on the basis that in Blystone the petitioner presented no mitigating circumstances whereas he had done so. Zettlemoyer argues that the mandatory result of the jury's process of weighing aggravating and mitigating circumstances excluded it from making a "unique judgment" about him as a "specific defendant." Additionally, he reiterates the ineffective assistance of counsel and improper jury instruction arguments made to the district court.
 
 II. DISCUSSION
 A. Scope of Review
 
 39
 Our scope of review is limited as we sit not to retry state cases de novo but rather to examine the proceedings in the state court to determine if there has been a violation of federal constitutional standards.[5] Milton v. Wainwright, 407 U.S. 371, 377, 92 S.Ct. 2174, 2178, 33 L.Ed.2d 1 (1972). Accordingly, we do not exercise the supervisory power that we might possess on an appeal from a conviction in the district court. Donnelly v. DeChristoforo, 416 U.S. 637, 642-43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Where, as here, a district court has denied a petition for habeas corpus without holding an evidentiary hearing, our review consists of a two-step analysis. Smith v. Freeman, 892 F.2d 331, 338 (3d Cir.1989) (citing Toomey v. Clark, 876 F.2d 1433, 1435 (9th Cir.1989)). First, we must determine whether the petitioner has alleged facts that, if proved, would entitle him to relief. Smith, 892 F.2d at 338 (citing Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756-57, 9 L.Ed.2d 770 (1963); Toomey, 876 F.2d at 1435). If so, we must then decide whether an evidentiary hearing is necessary to establish the truth of those allegations. Smith, 892 F.2d at 338 (citing Townsend, 372 U.S. at 312-19, 83 S.Ct. at 756-60; Toomey, 876 F.2d at 1435). We therefore consider the facts in this case in the light most favorable to Zettlemoyer. Smith, 892 F.2d at 338 (citing Keller v. Petsock, 853 F.2d 1122, 1128 (3d Cir.1988)). Of course, his contentions implicating the interpretation and application of legal precepts receive plenary review. Sullivan v. Cuyler, 723 F.2d 1077, 1082 (3d Cir.1983) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981)). Furthermore, we freely review the district court's conclusions regarding the competency of Zettlemoyer's trial counsel. Lewis v. Mazurkiewicz, 915 F.2d 106, 110 (3d Cir.1990).
 
 B. The Blystone Ruling
 
 40
 Zettlemoyer's argument that the Pennsylvania death penalty statute is unconstitutional as applied to him centers on the instruction to the jury that it was required to impose the death penalty if the result of a weighing process tipped in favor of the aggravating circumstance. He contends that the jury's discretion in applying the death penalty was thus unconstitutionally removed and he could not be individually judged.
 
 
 41
 In Blystone, the Supreme Court held that, notwithstanding its "mandatory" language, the Pennsylvania death penalty statute is not unconstitutional on its face because it satisfies the requirement that a capital-sentencing jury be allowed to consider and to give effect to all relevant mitigating evidence and because the death penalty is not automatically imposed for certain types of murders. The Court explained that rather "[i]t is imposed only after a determination that the aggravating circumstances outweigh the mitigating circumstances present in the particular crime by the particular defendant, or that there are no such mitigating circumstances." Blystone v. Pennsylvania, 110 S.Ct. at 1082-83. Additionally, the Court held that the statute was not unconstitutional as applied to Blystone who was convicted of first-degree murder, robbery, criminal conspiracy to commit homicide, and criminal conspiracy to commit robbery. Id. at 1084. The jury which convicted Blystone returned a death penalty verdict after finding, pursuant to Pa.Cons.Stat.Ann. Sec. 9711(d)(6), the aggravating circumstance that Blystone committed a killing while in the perpetration of a felony and further finding that there were no mitigating circumstances.[6] 110 S.Ct. at 1081.
 
 
 42
 The Court rejected Blystone's argument that where a jury found there were no mitigating circumstances, mandatory imposition of death violated the Eighth Amendment requirement of individualized sentencing since the jury was precluded from considering whether the severity of the aggravating circumstance warranted the death penalty. Id. at 1083. The Court explained that "[t]he presence of aggravating circumstances serves the purpose of limiting the class of death-eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighed by a jury.... The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence." Id. (emphasis added) (citing Lowenfield v. Phelps, 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988)). Finding that the trial court "specifically instructed the jury to consider, as mitigating evidence, any 'matter concerning the character or record of the defendant, or the circumstances of his offense,' " the Court concluded that the statute, as applied, did not violate the Eighth Amendment. 110 S.Ct. at 1083-84. Moreover, the Court concluded that the trial court's examples of mitigating circumstances did not preclude the jury's considering any other mitigating factors. Id. at 1084.
 
 
 43
 Blystone is dispositive on Zettlemoyer's statutory constitutional issue. The trial court here instructed the jury on mitigating circumstances as follows:
 
 
 44
 There are in the law--well, there's an unlimited number. They list eight. They list seven and they say, any other evidence of mitigation concerning the character. Four of them may be applicable to this case, the others are not. They are one, that the defendant has no significant history of prior criminal convictions; two, he was under the influence of extreme mental or emotional distress; the third one, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired; four, the age of the defendant at the time of the crime and then this eighth one; any other evidence of mitigation, which would be the fifth one to consider, any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.
 
 
 45
 All of the evidence from both sides that you have heard earlier, of course, during the trial in chief, all of that which has any bearing in your judgment upon aggravating or mitigating circumstances as I have mentioned them is important or proper for you to consider.
 
 
 46
 App. at 203-04.
 
 
 47
 The court, therefore, instructed the jury that several mitigating circumstances might apply to Zettlemoyer for this particular crime. The trial court instructed the jury to consider Zettlemoyer's age, mental and emotional status at the time of the crime, and absence of a criminal record. These factors distinguished him from other defendants and provided the individualized consideration required by Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (individualized sentencing required by fundamental respect for humanity underlying Eighth Amendment). Additionally, because the jury retained discretion in assigning weight to these factors and in weighing them against any aggravating circumstances, the statutory plan did not "automatically" impose a sentence of death. See id. (statute that automatically imposes death sentence without particularized consideration of character and record of defendant struck down); Roberts v. Louisiana, 428 U.S. 325, 333-34, 96 S.Ct. 3001, 3006-07, 49 L.Ed.2d 974 (1976) (same).
 
 
 48
 The Blystone Court held that a trial court's specific instruction to the jury to consider, as mitigating evidence, any "matter concerning the character or record of the defendant, or the circumstances of his offense," complied with the requirements of the Eighth Amendment. Blystone, 110 S.Ct. at 1083-84. See also Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) (jury must be able to consider and to give effect to any mitigating evidence relevant to defendant's background, character, or circumstances of crime); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (plurality opinion) (sentencer must be allowed to consider any aspect of defendant's character or record and any circumstances of the offense as mitigating factors). The trial court here gave this exact instruction. See App. at 203. Additionally, the court instructed the jury to consider all evidence presented from both sides during both the guilt and sentencing phases of trial "which has any bearing in your judgment upon aggravating and mitigating circumstances." Id. at 203-04 (emphasis added). This broad instruction permitted the jury to consider mitigating factors in addition to the character, record, or offense evidence required by Blystone. This unrestricted consideration of mitigating circumstances clearly meets the Eighth Amendment's requirements. See Blystone, 110 S.Ct. at 1083-84; Penry, 109 S.Ct. at 2947; Lockett, 438 U.S. at 604, 98 S.Ct. at 2964 (plurality opinion). We, therefore, reject Zettlemoyer's argument that the statute is unconstitutional as applied to him.
 
 C. Competency of Counsel
 
 49
 Zettlemoyer argues that his trial counsel was ineffective for not presenting competent psychological testimony on the issue of diminished capacity at the trial and not presenting psychological testimony or affirmative evidence at the sentencing hearing. We will address these contentions seriatim.
 
 1. Guilt Phase
 
 50
 During the guilt phase of the trial, Zettlemoyer's counsel presented Dr. Stanley Schneider to testify to his diagnosis of Zettlemoyer's mental condition. Dr. Schneider is a clinical psychologist licensed in Pennsylvania who had been Director of the Department of Psychology at the Harrisburg State Hospital. App. at 114. Dr. Schneider interviewed and tested Zettlemoyer on three separate occasions, interviewed his paternal grandparents, parents, and one sister, and reviewed Zettlemoyer's school and police records. Id. at 126. During his meetings with Zettlemoyer, Dr. Schneider administered seven different psychological tests within three general categories; intellectual functioning,[7] personality,[8] and "projected tests" which gave Zettlemoyer the opportunity to project his own "unique thoughts, ideas, anxieties, needs, [and] conflicts" in response to certain relatively unstructured stimuli.[9] Id. at 128-30. The tests indicated that Zettlemoyer functioned in the average range of intelligence with some deficits in his common sense and practical judgment, particularly as it related to interpersonal relationships. Id. at 131. Zettlemoyer's intelligence was also weak when compared to his age group and the personality test revealed that he apparently distorted his responses to exaggerate his symptoms. Id. at 131-32. Dr. Schneider did not find any evidence of organic or physical involvement or any suggestion of trauma to the brain or central nervous system. Id. at 133. Dr. Schneider testified that the projected tests revealed that Zettlemoyer was not psychotic, but had limited ability to tolerate adversity, and that too much emotional stimulation caused a loss in his judgment. Id. at 134-35. Dr. Schneider concluded that Zettlemoyer was a paranoid personality with schizoid features and that Zettlemoyer had suffered this personality disorder for his entire life. Id. at 137-41.
 
 
 51
 At one point, Dr. Schneider testified that he was:
 
 
 52
 a pampered, doted upon, catered to, in simple terminology spoiled brat who figured out how to get what he wanted, either directly or by manipulating or controlling the situation to get what he wanted his entire life and I believe that faced with the number of stresses that he had to deal with that he could not cope with, and he decompensated [and] ... engaged in a variety of unproductive behaviors.
 
 
 53
 Id. at 143.
 
 
 54
 Zettlemoyer's counsel then asked Dr. Schneider:
 
 
 55
 I specifically want to direct your attention to October the 13th of 1980, to the early morning hours, I want to ask you with a reasonable degree of medical certainty, was the Defendant's mental illness of such an intensity at that time, at the time of the killing, that he was not mentally capable of fully forming the specific intent which is required for a willful deliberate and premeditated act?
 
 
 56
 Id. at 148.
 
 
 57
 The trial court sustained the district attorney's objection to this question and refused to permit Dr. Schneider to answer, stating at sidebar that "assuming all these things are correct, [it] is no legal excuse for a crime." Id. at 149. The court reasoned that, notwithstanding Dr. Schneider's thorough examination of Zettlemoyer's personality, Dr. Schneider could not testify whether, at the time of the killing, Zettlemoyer could form a specific intent to kill because the testimony did not lay a proper foundation for that conclusion. Id. at 151-52.
 
 
 58
 Zettlemoyer does not contend that this ruling was incorrect, as he admits that Dr. Schneider was not "qualified" and "competent to offer the opinion testimony for which he was called as a witness by [his] trial counsel." Brief at 13. Of course, the Supreme Court of Pennsylvania upheld the ruling under state law on the direct appeal. Commonwealth v. Zettlemoyer, 500 Pa. at 27, 454 A.2d at 943.
 
 
 59
 Rather, Zettlemoyer claims that his counsel was ineffective because he did not identify or secure a witness who could have provided competent opinion testimony on the defense of diminished capacity at the guilt phase of the trial. He also contends that trial counsel was ineffective because Dr. Schneider's key testimony was inadmissible and because the counsel produced negative personality testimony, without the ultimate conclusion that such factors reduced his culpability, thereby prejudicing his case. He also claims prejudice from the trial court's instruction to the jury, in which he maintains the court "interjected its negative opinion of the core of [his] defense, suggesting that Dr. Schneider's testimony should be disregarded." Brief at 16.
 
 
 60
 The Supreme Court set forth the criteria for determining whether relief may be granted on the ground of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A petitioner must show (1) that counsel made errors so serious that counsel's representation fell below an objective standard of reasonableness, and (2) that such failure resulted in prejudice so as to deprive the petitioner of a fair trial, that is, a trial whose result is reliable. Id. at 688, 104 S.Ct. at 2064. However,
 
 
 61
 a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function ... is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
 
 
 62
 Id. at 690, 104 S.Ct. at 2066.
 
 
 63
 In order to resolve the ineffectiveness claim, we must consider Zettlemoyer's counsel's conduct within the context of Pennsylvania law regarding the defense of diminished capacity. Pennsylvania recognizes the defense to show that a defendant did not have the capacity to possess the state of mind required by the legislature to commit a particular degree of the crime charged. Commonwealth v. Walzack, 468 Pa. 210, 220-21, 360 A.2d 914, 919-20 (1976).[10] Defendants invoking the defense of diminished capacity, however, concede general criminal liability and Zettlemoyer has done this. Id. Evidence of diminished capacity is admissible at the guilt phase of trial and a jury finding diminished capacity may not find the defendant guilty of first degree murder, but it may find the defendant guilty of third degree murder. Pennsylvania case law now establishes that, to prove diminished capacity, only expert testimony on how the mental disorder affected the cognitive functions necessary to form the specific intent is relevant and admissible. Commonwealth v. Terry, 513 Pa. 381, 393, 521 A.2d 398, 404, cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987); Commonwealth v. Davis, 331 Pa.Super. 59, 64, 479 A.2d 1077, 1080 (1984) (personality disorders are irrelevant to show diminished capacity). But when Zettlemoyer was tried the law was slightly different, as a finding of diminished capacity depended on whether the defendant had a "conscious intent to kill." Commonwealth v. Sourbeer, 492 Pa. 17, 31-32 n. 2, 422 A.2d 116, 123 n. 2 (1980); Commonwealth v. Brantner, 486 Pa. 518, 523, 406 A.2d 1011, 1014 (1979).
 
 
 64
 Evidence of specific intent to kill may disprove the defense of diminished capacity. See Commonwealth v. Tempest, 496 Pa. 436, 442, 437 A.2d 952, 955 (1981). In Tempest, the Supreme Court of Pennsylvania held that evidence adduced at trial that showed the defendant planned the killing days in advance, considered various means to kill, persisted despite the victim's pleas, and repeated at various times her motive for the killing, sufficed to enable the trier of fact to reject the diminished capacity defense. Id. The defendant presented evidence that she suffered from chronic schizophrenia, acute type. Id. at 439, 437 A.2d at 954. The trial court had initially determined that the defendant was incompetent to stand trial but less than two years later, she was adjudged competent. Id. at 439-40, 437 A.2d at 954. Notwithstanding this evidence, the Supreme Court affirmed her conviction of first degree murder, concluding that the Commonwealth had adduced ample evidence to reject the diminished capacity defense and to prove that she possessed the specific intent to kill. Id. at 442, 437 A.2d at 955.
 
 
 65
 Likewise, in Commonwealth v. Davis, 331 Pa.Super. 59, 65, 479 A.2d 1077, 1080 (1984), the Superior Court upheld the trial court's rejection of the defendant's diminished capacity defense and affirmed his conviction of first degree murder. Id. The defendant had presented evidence that he had experienced a schizophrenic episode at the time of the murder. Id. The Superior Court noted that the trier of fact had evidence of specific intent to kill, including the defendant's shooting the decedent twice at close range, his prior threats to kill her, his threat to cut her throat while holding a knife to her neck, his breaking into her apartment in the early hours possessing a deadly weapon, and his firing shots at her as she fled the apartment. Id. at 64, 479 A.2d at 1080. In light of this evidence, the court concluded that the record showed ample support for the trial court's discrediting the psychological testimony of diminished capacity. Id. at 65, 479 A.2d at 1081.
 
 
 66
 After considering Pennsylvania law and the record here, we conclude that Zettlemoyer is not entitled to relief on his claim that his counsel was ineffective for calling Dr. Schneider, even though his testimony was not admissible on the issue of diminished capacity. The colloquy at sidebar after the Commonwealth's objection to Dr. Schneider's testimony clearly shows that defense counsel was familiar with the diminished capacity defense and its requirements. See App. at 149-50. Counsel referred the court to three diminished capacity cases, Commonwealth v. Sourbeer, 492 Pa. 17, 422 A.2d 116 (1980), Commonwealth v. Brantner, 486 Pa. 518, 406 A.2d 1011 (1979), and Commonwealth v. Walzack, 468 Pa. 210, 360 A.2d 914, in his attempt to persuade the court to permit Dr. Schneider to give his opinion on Zettlemoyer's mental capability to form specific intent to kill. App. at 149-50. It is obvious, therefore, that he had thoroughly researched the defense. The trial court rejected counsel's arguments by distinguishing these precedents on their facts. Id. at 149, 151 (distinguishing Sourbeer, 492 Pa. at 25-26, 422 A.2d at 119-20 (psychiatrist testified that defendant had passive-aggressive personality with antisocial tendencies); Brantner, 486 Pa. at 523, 406 A.2d at 1014 (psychiatrist testified that defendant had schizoid personality and was paranoid); Walzack, 468 Pa. at 215, 360 A.2d at 916 (defendant had undergone lobotomy)). Counsel cannot be deemed ineffective merely because he could not persuade the court to admit Dr. Schneider's opinion. He fully developed Dr. Schneider's testimony but it simply was not sufficient to lay a foundation for the opinion question. Yet there is nothing unusual in an attorney not being able to convince a court that evidence should be admitted.
 
 
 67
 Clearly, Zettlemoyer did have significant personality problems and it was reasonable strategy for counsel to bring them out in an attempt to convince the court to allow Dr. Schneider's testimony. A defense counsel cannot be deemed ineffective just because he is not successful. Finally, on this issue we point out that at the time of Zettlemoyer's trial, Pennsylvania law was in a state of flux regarding diminished capacity and even the Supreme Court of Pennsylvania was having difficulty dealing with the defense. See Commonwealth v. Zettlemoyer, 500 Pa. at 27-31, 454 A.2d at 943-44. Thus, it is not surprising that a defense counsel did as well.
 
 
 68
 In any event, the evidence that Zettlemoyer had the specific intent to kill was overwhelming. Zettlemoyer was very heavily armed when police discovered him at the scene of the murder. See Transcript of Trial, Vol. II, at 383-431. The police testified that they found on Zettlemoyer's person forty-one rounds of .357 federal ammunition; twenty-four in strip packets with more deadly semi-jacketed hollow points, and seventeen loose, and that he was carrying a knife with a six-inch blade and sheath, wore a shoulder holster, two beltkeepers, and an ammunition pouch. Id. at 399, 406, 428, 429, 431. Zettlemoyer carried two handcuff keys and a canister of tear gas and was dressed in dark clothing and black gloves. Id. at 383, 406, 428-29. An inventory search of his van, parked near the site of the murder, revealed two sets of handcuffs; two spent .22 caliber casings; and a .22 caliber pistol with holster and clip. Id. at 452. Just outside the van, police found a .357 live round on the ground. Id. at 459. Zettlemoyer drove his van as far back as possible into the deserted area where the murder occurred, to a point where it could not be seen. Transcript of Trial, Vol. I, at 8, 9; Vol. II, at 388. Surely this irrefutable physical evidence demonstrated that he had extensively prepared for the crime and had a specific intent to kill.
 
 
 69
 But there is more. The victim, DeVetsco, lived and worked in Sunbury, Pennsylvania, approximately one hour's drive from where his body was found. He carried no identification; his license, car, and car keys were at his apartment in Sunbury, suggesting that he was not willingly travelling from Sunbury to the murder scene in Harrisburg. Transcript of Trial, Vol. II, at 513, 514. The jury heard testimony that Zettlemoyer dragged the handcuffed DeVetsco, who already had been shot and was bleeding, from the van to the spot where Zettlemoyer shot him twice more. Transcript of Trial, Vol. I, at 22. In total, DeVetsco suffered two wounds in the back from a .22 caliber weapon and two wounds in the base of the neck, behind his left ear. Transcript of Trial, Vol. II, at 465-66. Zettlemoyer fired these last two shots from approximately two feet away while the victim lay on the ground. Id. at 472, 474. Discharging a deadly weapon aimed at a vital part of the body demonstrates specific intent to kill. See Commonwealth v. Davis, 331 Pa.Super. at 64, 479 A.2d at 1080.
 
 
 70
 The testimony also showed that Zettlemoyer had a motive to commit the murder. One week before the murder, during the jury selection for a trial on the indictment against Zettlemoyer handed down by a Snyder County jury, the list of prospective witnesses which included DeVetsco was read in Zettlemoyer's presence. Transcript of Trial, Vol. II, at 530-32. The trial was scheduled to begin one week after the murder. Id. at 532. There is no escaping the fact that this was a vicious, cold-blooded, premeditated execution-style murder.[11]
 
 
 71
 In light of this overwhelming evidence demonstrating Zettlemoyer's specific intent to kill DeVetsco, we conclude that Zettlemoyer was not prejudiced by Dr. Schneider's inability to testify to his cognitive functioning at the time of the murder. We cannot conceive that any expert opinion would have led the jury to disregard the compelling uncontroverted evidence of what actually happened and conclude that Zettlemoyer had a diminished capacity, predicated on a lack of a conscious or specific intent to kill. This crime was so carefully executed and reflective of specific planning that, it seems to us, a suggestion that Zettlemoyer had a diminished capacity, as that term is understood under Pennsylvania law, is nothing short of preposterous. Thus, even if counsel had been ineffective in failing to extract expert testimony to support a claim of diminished capacity, which he was not, Zettlemoyer is not entitled to habeas relief because the failure did not prejudice him by depriving him of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064. Likewise, Dr. Schneider's testimony regarding Zettlemoyer's personality, which characterized him as, inter alia, a "spoiled brat," paled in comparison to the overwhelming evidence of his specific intent to kill. The testimony, while portraying Zettlemoyer in a less than flattering light, did not undermine the reliability of the result of the trial. There is no escape from the fact that the evidence in this case was overwhelming.
 
 
 72
 We recognize that Zettlemoyer maintains that counsel failed to call some other witness who might have presented testimony crucial to his defense of diminished capacity; however, he neither alleges nor offers evidence that any such testimony was forthcoming or available upon reasonable investigation. A witness cannot be produced out of a hat. Zettlemoyer cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention. See Mayberry v. Petsock, 821 F.2d 179, 187 (3d Cir.) (petitioner's vague and general allegations and supporting materials fail to make sufficient showing to justify relief), cert. denied, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987). Having failed to do so, he is not entitled to habeas relief on this claim.[12] Furthermore, even if the counsel had produced a second expert witness, that witness would have been confronted with the uncontroverted evidence of Zettlemoyer's actual conduct and would not have been able to explain it away.
 
 2. Sentencing Phase
 
 73
 The second aspect of Zettlemoyer's attack on his trial counsel relates to the sentencing phase of the trial. He claims that his counsel was ineffective in that he did not recall Dr. Schneider to testify at that hearing and did not present affirmative evidence during this phase. Rather, counsel called only one witness, Zettlemoyer's father, to testify about his son's mental and emotional health at the time of the murder.
 
 
 74
 We consider counsel's failure to recall Dr. Schneider in the context of Pennsylvania law. In Pennsylvania, a defendant has the burden to show mitigating circumstances by a preponderance of the evidence at the sentencing hearing. 42 Pa.Cons.Stat.Ann. Sec. 9711(c)(1)(iii). The Commonwealth stipulated to the existence of two mitigating factors: that Zettlemoyer had no prior criminal convictions under section 9711(e)(1) and that he was 25 years old, an arguably youthful age within section 9711(e)(4). App. at 180.
 
 
 75
 Dr. Schneider was the last defense witness during the guilt phase; the jury heard his testimony less than 24 hours before the sentencing hearing. Transcript of Trial, Vol. II, at 690-745. The Commonwealth put on only a minimal rebuttal case. Id. at 747-70. In fact the trial was quite short as both the guilt and sentencing phases were completed within one week. Dr. Schneider testified that Zettlemoyer was "unable ... to deal with the normal pressures, demands, [and] responsibilities of daily living." App. at 142. He stated that he believed that Zettlemoyer's "reaction over this period of time resulted in, well, what I refer to as a pressure cooker syndrome, pressure mounting up. If you don't have a release valve it will blow and that's where I believe that the emotional disturbance, in addition to the personality disorder, may have resulted in the behavior." Id. He continued that this "pressure cooker effect" worsened in the two weeks before the murder due to the publicity surrounding the robbery for which Zettlemoyer was charged. Id. at 145. This testimony goes to the two mitigating factors of the influence of extreme mental or emotional disturbance pursuant to section 9711(e)(2), and whether Zettlemoyer's capacity to appreciate the criminality of his conduct and to conform his conduct with the law were substantially impaired pursuant to section 9711(e)(3).
 
 
 76
 This testimony was reinforced at the sentencing phase by Zettlemoyer's father who testified that he had spoken with his son in the two weeks before the murder and that he could see the stresses building up in him. App. at 184. He further testified that, based on his observations and conversations with his son at that time, Zettlemoyer's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law were substantially impaired. Id. at 185. He stated that, since his imprisonment, his son had "shown considerable remorse" and that he had "taken to religion to some extent which is something he never did before." Id. at 184.
 
 
 77
 In his closing argument, counsel specifically asked the jury to consider the testimony on diminished capacity. Id. at 192. Relevant portions of the closing argument include:
 
 
 78
 [T]wo [mitigating circumstances] deal with the mental capacities of the defendant; extreme mental or emotional disturbance or the capacity of the defendant to appreciate the criminality of his conduct.
 
 
 79
 ....
 
 
 80
 Now, if you did not believe the defense of diminished capacity then I certainly hope that at least you would consider it in regards to life or death. The District Attorney has agreed to incorporate all that testimony that we presented to you at trial and I want you to consider it.
 
 
 81
 Id. at 191-92.
 
 
 82
 Additionally, the trial court instructed the jury to consider whether Zettlemoyer was under extreme mental or emotional distress and his capacity to appreciate the criminality of his conduct or to conform his conduct to the law, factors which may be mitigating circumstances under section 9711(e)(2) and (3). App. at 203-04. It likewise instructed the jury to consider all evidence presented by both sides during both the guilt and sentencing phases in determining the penalty. Id. at 203-04. See supra at 293.
 
 
 83
 In the circumstances, we see no deficiency in counsel's decision not to recall Dr. Schneider, as the choice plainly was well within the range of a professionally reasonable judgment. Counsel presented evidence to support the relevant mitigating circumstances during the guilt phase of the trial and both counsel and the court asked the jury to consider this evidence in its sentencing decision. We cannot hold that counsel's action in not recalling Dr. Schneider to repeat his testimony at the sentencing phase of this short trial in which the testimony from the guilt phase was then still quite fresh satisfied the Strickland standard of ineffectiveness that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064. There is not the slightest doubt that the jury had a very complete psychological picture of Zettlemoyer as an individual.
 
 
 84
 In view of the foregoing, we find the following statement in Zettlemoyer's brief to be inexplicable:
 
 
 85
 Indeed, the testimony of Dr. Schneider at the trial of Mr. Zettlemoyer's guilt or innocence demonstrates that his opinion testimony at sentencing would have been admissible, relevant of Mr. Zettlemoyer's intellectual capacity and emotional situation at the time of the murder, and thus of central importance to the jury's consideration of mitigation.
 
 
 86
 Brief at 18-19.
 
 
 87
 The difficulty with this argument is that inasmuch as the guilt phase testimony was incorporated into the sentencing phase, Dr. Schneider's testimony not only "would have been admissible" at the sentencing phase, it was admitted. Zettlemoyer then continues his argument stating that trial counsel's affirmative case at the sentencing phase consisted only of the evidence of Zettlemoyer's father and that "[n]o use was made of Dr. Schneider." This statement is incomprehensible since the evidence from the guilt phase was incorporated into the sentencing phase. Indeed, in his closing argument at the sentencing phase, Zettlemoyer's counsel told the jury that: "The District Attorney has agreed to incorporate all that testimony that we presented to you at trial and I want you to consider it." Shortly thereafter he asked the jury to consider Zettlemoyer's mental sickness. The attack on trial counsel for making only, in the word used in Zettlemoyer's brief, a "perfunctory" case for Zettlemoyer's life is completely unfounded.
 
 
 88
 Our result is informed by a recent case in which a similar claim regarding the failure to recall a professional witness was rejected. The United States Court of Appeals for the Fourth Circuit recently held that counsel was not ineffective for not recalling, during the sentencing hearing, a psychiatrist who testified during the guilt phase of a trial. Clozza v. Murray, 913 F.2d 1092 (4th Cir.1990). The court explained that counsel had been able to introduce at the guilt phase all the mitigating evidence that could have introduced at the penalty phase. Id. at 1102. During a hearing in the state habeas corpus proceedings, the psychiatrist testified that his testimony at sentencing would not have been different than his testimony at the guilt phase. Id. Additionally, the court of appeals noted that the doctor's testimony, which was based on the premise that the defendant was intoxicated at the time of the offense, was vulnerable to impeachment on cross-examination because defendant testified that he was sober at the time. Id. The court concluded that counsel's decision not to recall the psychiatrist in light of the potential damage of his testimony was a reasonable tactical choice. Id. at 1102-03.
 
 
 89
 We also find that Zettlemoyer's claim that counsel was ineffective for failing to present other affirmative evidence during the sentencing phase is without merit. Counsel presented the stipulations, the testimony of Zettlemoyer's father, and incorporated the earlier testimony into the sentencing hearing. At the guilt phase Zettlemoyer's paternal grandmother and his mother described his conduct as a child and as a young man. In his brief, Zettlemoyer points to no evidence other than that of Dr. Schneider that might have been produced at the sentencing phase. Inasmuch as Dr. Schneider's evidence was before the jury as incorporated by reference, it is thus clear that Zettlemoyer has made no showing that counsel was not competent. He cannot rest on a conclusory allegation that he should have done more. Furthermore, the jury had information in support of a conclusion that four of the mitigating factors enumerated in section 9711(e) were present in this case.[13]
 
 
 90
 We have not overlooked the fact that the district court did not order an evidentiary hearing on the claim of counsel's ineffectiveness at the sentencing phase. Rather, we find on the record of this case that it would have been improper to have such a hearing. The law on the point is familiar. Where the facts are in dispute in a habeas case, a federal court must hold an evidentiary hearing if the petitioner did not receive a full and fair evidentiary hearing in state court, either at trial or in a collateral proceeding. Townsend v. Sain, 372 U.S. at 312, 83 S.Ct. at 756-57. A district court must hold a hearing if the petitioner has alleged facts that, if proved, would entitle him or her to relief and an evidentiary hearing is necessary to establish the truth of those allegations. Smith v. Freeman, 892 F.2d at 338. However, bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing. Mayberry v. Petsock, 821 F.2d at 185. See also Barry v. United States, 528 F.2d 1094, 1101-02 (7th Cir.) (insufficiently detailed affidavit that did not demonstrate that petitioners had actual proof of allegations is "patently insufficient" to require hearing under 28 U.S.C. Sec. 2255), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976).
 
 
 91
 We, of course, must only determine "the reasonableness of counsel's challenged conduct" and we judge this matter on the basis of an objective standard of reasonableness. Strickland v. Washington, 466 U.S. at 688, 690, 104 S.Ct. at 2064, 2066. Here, it is perfectly clear that counsel's conduct was reasonable, because counsel made a complete record in support of a plea for a life sentence by incorporating the record from the guilt phase into the sentencing phase of the case, and supplementing it with Zettlemoyer's father's testimony.
 
 
 92
 We also reiterate that although Zettlemoyer complains that counsel did not produce affirmative evidence during the sentencing hearing, he has failed to specify any evidence that was available to counsel that he did not present during either the guilt phase or the sentencing phase of trial. At oral argument before us, appellate counsel maintained that trial counsel could have brought out the facts of petitioner's childhood and his proclivity to use violence; however, these facts were presented during the guilt phase. Likewise, counsel presented evidence of petitioner's mental and emotional instability during the guilt phase.
 
 
 93
 We understand why an evidentiary hearing on the issue of counsel's competency might be required in a case in which a petitioner could point to specific significant mitigating evidence, available to counsel at the time of the trial, that was not produced at a sentencing phase and was not before the jury from the guilt phase. In such a case, the court might not be able to judge the objective reasonableness of counsel's conduct without the counsel's explanation of the underlying trial strategy. But we do not have that situation, for Zettlemoyer's assertion that other evidence should have been presented is merely a conclusory allegation. Mayberry v. Petsock, 821 F.2d at 185. He has not made a preliminary showing that mitigating facts available to counsel were not produced at the trial. Thus, there is no open factual matter requiring resolution at an evidentiary hearing.
 
 
 94
 We will not require an evidentiary hearing absent identification of some facts that support a contention of ineffectiveness, because to do so will encourage meritless petitions burdening judicial resources. See Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. at 2066 ("The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense."). Litigation even in a death case must some day come to a conclusion. We reiterate that a district court must hold a hearing if a petitioner has alleged facts that, if proved, would entitle him or her to relief and an evidentiary hearing is necessary to establish the truth of those allegations. Smith v. Freeman, 892 F.2d at 338. But Zettlemoyer did not allege facts to satisfy this test and thus is not entitled to an evidentiary hearing.[14] We refuse to order an evidentiary hearing for the purpose of conducting an inquisition into how the case was tried. The only way on the record before us that we could require an evidentiary hearing on counsel's effectiveness at the sentencing hearing would be to hold that the mere charge of ineffectiveness per se entitles a petitioner to a hearing. That is not the law and we will not so hold. In sum, we conclude that Zettlemoyer has failed to meet his burden to show that he is entitled to habeas relief based on ineffective assistance of counsel.[15]
 
 
 95
 While we have already explained why we will not order a hearing on the competency of counsel at the sentencing phase, in view of the interest at stake on this appeal it is especially appropriate to comment on the dissent from this aspect of our opinion. The dissent states that Dr. Schneider was testifying on the guilt phase on the diminished capacity defense and not to show mitigating circumstances, and that the jury did not hear his testimony from the perspective of whether Zettlemoyer's life should be spared. But Dr. Schneider completely described Zettlemoyer's mental condition and emotional state prior to the murder in the guilt phase, only hours before the sentencing phase and, though the purpose of that evidence somewhat changed between the phases, no one suggests that Dr. Schneider's evaluation of Zettlemoyer's mental condition and emotional state did. Furthermore, inasmuch as Dr. Schneider testified that Zettlemoyer's "emotional disturbance, in addition to the personality disorder, may have resulted in the behavior," he actually used the statutory term for a mitigating circumstance, "emotional disturbance," in describing the cause of Zettlemoyer's conduct. In the circumstances, it is clear why it was reasonable for counsel not to have the evidence repeated, even though it was originally presented on the diminished capacity defense. Of course, the petition for habeas corpus does not allege that Dr. Schneider withheld evidence at the guilt phase regarding Zettlemoyer's evaluation or his emotional state possibly helpful to Zettlemoyer in the sentencing phase.[16]
 
 
 96
 The dissent also contends that a hearing should have been held to determine why Zettlemoyer's mother was not recalled at the sentencing phase and to explain why counsel would not have called Zettlemoyer's friends, co-workers, or his former fiancee to support the claim of overwhelming emotional disturbance. It further contends that a hearing should be held so that trial counsel could explain his "complete failure" to present evidence of "catch-all" mitigating circumstances, though it acknowledges that Zettlemoyer points to no "specific significant mitigating evidence" which it agrees is "troubling."
 
 
 97
 But a decade has passed since this murder and Zettlemoyer has never alleged that he was deprived of the testimony which the dissent mentions, and we cannot by speculation supply a basis to remand a matter for a hearing to determine if counsel was incompetent in not producing this evidence when Zettlemoyer does not make a showing or even an allegation that it ever existed. Moreover, he does not assert that his mother should have been recalled. Except for Dr. Schneider, the petition for habeas corpus, which insofar as germane to the issue of competency of counsel at the sentencing phase we have set out in full, see note 14, supra, makes no reference to testimony of specific individuals who should have been presented at the sentencing phase and were not.[17]
 
 D. The Jury Instructions
 
 98
 Zettlemoyer contends that the trial court's instructions to the jury were defective in several respects. First, he asserts that the trial court improperly instructed the jury that it had no responsibility for imposition of the death penalty, in violation of the holding in the Supreme Court's subsequent decision in Caldwell v. Mississippi, 472 U.S. at 320, 105 S.Ct. at 2633. Second, he urges that the trial court's instruction erroneously suggested that the jury's finding on mitigating circumstances must be unanimous, a charge barred by Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Finally, he contends that the instructions were deficient because they did not include an instruction that, if the jury could not unanimously agree that the death penalty should be imposed, the court would impose a life sentence pursuant to section 9711(c)(1).
 
 1. Teague v. Lane
 
 99
 Initially on the instructions point we note that Zettlemoyer must overcome Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality) in order for Caldwell to apply retroactively in this case. In Teague, the Supreme Court held that a determination of whether a decision is to be applied retroactively to cases on collateral review is "properly treated as a threshold question." Id. at 300, 109 S.Ct. at 1069. The Court held that new rules may be applied in habeas corpus proceedings only if they come within one of two narrow exceptions. Id. at 310, 109 S.Ct. at 1075. The first exception "applies to new rules that place an entire category of primary conduct beyond the reach of the criminal law, ... or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense." Sawyer v. Smith, --- U.S. ----, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990) (citations omitted). "The second Teague exception applies to new 'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." Id. 110 S.Ct. at 2831.
 
 
 100
 In general, a case announces a new rule if it "breaks new ground or imposes a new obligation on the States or the Federal Government." Teague, 489 U.S. at 301, 109 S.Ct. at 1070. Put another way, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. at 301, 109 S.Ct. at 1070 (emphasis in original). That prior decisions "inform or even control or govern analysis of [the] claim' " is insufficient to require retroactive application of the rule. Sawyer, 110 S.Ct. at 2828.
 
 2. Caldwell v. Mississippi
 
 101
 We turn first to Zettlemoyer's contention that the trial court improperly instructed the jury that it had no responsibility for imposition of the death penalty. The trial court instructed the jury as follows:
 
 
 102
 Ladies and Gentlemen, you must now decide what sentence is to be imposed upon the defendant, whether it be death or life imprisonment. In a very proper sense, you are not really making that decision. You are not deciding whether he should be sentenced to death or life imprisonment. That was the law years ago and the Supreme Court of the United States declared such death penalties to be unconstitutional. I won't go into the reason. One of the theories was that it placed discretion on the jury. They could decide whether a particular individual could suffer death or life imprisonment. They have removed that burden from you. That is not what you are to decide. You are to decide whether there are certain aggravating circumstances or mitigating circumstances and depending upon how you find those circumstances, as I will explain to you, your decision follows. It must follow. If you find a certain way, a certain penalty must follow. That is the law.
 
 
 103
 ....
 
 
 104
 So you see, it is not really your decision in a sense. You decide, of course, the underlying factors but it is the way you decide those factors that the penalty is imposed. That is the way the Supreme Court and our legislature have felt that they would remove that burden or that discretion from the jury.
 
 
 105
 App. at 200-02 (emphasis added).
 
 
 106
 In Caldwell v. Mississippi, 472 U.S. at 328-29, 105 S.Ct. at 2639-40, the Supreme Court held that the Eighth Amendment prohibits the imposition of a death sentence by a sentencer that has been led by the prosecuting attorney to the false belief that the responsibility for determining whether a capital sentence is to be imposed rests elsewhere. Id. In Caldwell, the assistant district attorney responded in his closing arguments to defense counsel's plea for mercy by stating:
 
 
 107
 Now, they would have you believe that you're going to kill this man and they know--they know that your decision is not the final decision.... Your job is reviewable.... They said 'Thou shalt not kill.' If that applies to him it applies to you, insinuating that your decision is the final decision and that they're going to take Bobby Caldwell out in the front of this courthouse in moments and string him up and that is terribly, terribly unfair. For they know, as I know, and as Judge Baker has told you, that the decision you render is automatically reviewable by the [state] Supreme Court.
 
 
 108
 Id. at 325-26, 105 S.Ct. at 2637-38.
 
 
 109
 Notably, the trial court agreed with the prosecutor's statements, stating "I think it is proper that the jury realizes that it is reviewable automatically as the death penalty commands." Id. at 325, 105 S.Ct. at 2638.
 
 
 110
 The Supreme Court vacated the death sentence, explaining that under the Eighth Amendment, it had long recognized that "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.' " Id. at 329, 105 S.Ct. at 2639. The Court concluded that false information about the "awesome responsibility" to determine the appropriateness of death and suggestion that the sentencing jury may shift its responsibility to an appellate court might produce "substantial unreliability as well as bias in favor of death sentences." Id. at 330, 105 S.Ct. at 2640.
 
 
 111
 If we assume that the holding in Caldwell was violated here, which as we shall later demonstrate it was not, Zettlemoyer nevertheless cannot be given relief because the Supreme Court has held in Sawyer v. Smith, 110 S.Ct. at 2833, that Caldwell is not applicable in cases in which the conviction became final before the Court announced the decision in Caldwell. The Court in Sawyer v. Smith held that Caldwell announced a "new rule" subject in its application to the limitations on retroactivity of Teague and it rejected the petitioner's argument that the case fell within the second Teague exception for a rule "fundamental to the criminal proceeding." Id. 110 S.Ct. at 2827, 2833.
 
 
 112
 The Court initially determined that the Caldwell rule was not " 'dictated by precedent existing at the time defendant's conviction became final,' " because its earlier precedent determining the propriety of a prosecutor's comments relied on a due process clause rather than Eighth Amendment analysis. Id. (discussing Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)). Additionally, finding that the Caldwell decision relied on Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), Lockett v. Ohio, 438 U.S. at 586, 98 S.Ct. at 2954 (plurality), Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality), and Woodson v. North Carolina, 428 U.S. at 280, 96 S.Ct. at 2978, only for "the general proposition that capital sentencing must have guarantees of reliability, and must be carried out by jurors who would view all of the relevant characteristics of the crime and the criminal, and take their task as a serious one," the Court concluded that this level of generality did not suffice to show that Caldwell was an old rule rather than a new rule limited by Teague. Sawyer, 110 S.Ct. at 2828.
 
 
 113
 The Sawyer Court also held that the rule did not fall within Teague's second exception for new "watershed rules of criminal procedure" necessary to the fundamental fairness of the criminal proceeding. Id. 110 S.Ct. at 2833. The Court noted that Teague required that such a rule "must not only improve accuracy, but also 'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding." Id. 110 S.Ct. at 2831. The Court noted that, because all Eighth Amendment jurisprudence concerning capital sentencing is directed at enhancing the reliability and accuracy of the proceeding, considering only fairness and accuracy would transform the second exception into a limitless rule. Id. 110 S.Ct. at 2832. The Court determined that the Caldwell rule was not an " 'absolute prerequisite to fundamental fairness' " because its enhancement of the accuracy of capital sentencing was in addition to the due process protection against fundamental unfairness set forth in Donnelly. Id. The Court, therefore, dismissed the petitioner's habeas corpus claim because he sought the benefit of a new rule that did not fall within either of Teague's exceptions. Id. 110 S.Ct. at 2833.
 
 
 114
 Zettlemoyer's conviction became final at the latest on August 23, 1983, when rehearing was denied by the United States Supreme Court on his direct appeal, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452, two years before the Court announced its decision in Caldwell.[18] Thus, he cannot rely on Caldwell to challenge his capital sentence in this federal habeas corpus action. Sawyer, 110 S.Ct. at 2833. Furthermore, he cannot avoid Teague on the basis that here, unlike in Caldwell, it was the trial court, rather than the prosecutor, which made the comments said to diminish the jury's sense of responsibility for, prior to Caldwell, precedent would not have dictated a result in conformity with Caldwell regardless of whether the court or the prosecutor made the remark. See Dugger v. Adams, 489 U.S. 401, 410, 109 S.Ct. 1211, 1217, 103 L.Ed.2d 435 (1989).
 
 
 115
 In any event, even if Teague and Sawyer did not bar the application of Caldwell in this case, we would find that there was no Caldwell violation. Caldwell was concerned with the shifting of the responsibility in the mind of the jury from it to the appellate court. Here there was simply no such shifting. All the trial court did was to explain the law and point out that if the jury made certain findings, then "a certain penalty must follow." But that was the exact opposite of reducing the jury's sense of responsibility, because the jury knew that depending upon its conclusion regarding aggravating and mitigating circumstances, Zettlemoyer would or would not receive the death sentence. Thus, it returned its verdict with knowledge of the consequences and had no reason to believe that it had not made the ultimate decision regarding the penalty.
 
 
 116
 There was no suggestion to the jury that the Supreme Court of Pennsylvania or anyone else would have the last word in the case. Furthermore, at the outset of the sentencing phase, the court told the jury that at the end of that phase "you will decide whether the defendant is to be sentenced to death or life imprisonment. Whether you sentence the defendant to death or life imprisonment will depend upon what, if any, aggravating or mitigating circumstances you find are present...." Thus, there is no way that the court's instructions could have diminished the jury's sense of responsibility.
 
 3. Mills v. Maryland
 
 117
 We turn next to Zettlemoyer's contention that the trial court's instruction erroneously suggested that the jury's finding on mitigating circumstances must be unanimous and accordingly violated the rule in Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).[19] In particular, Zettlemoyer contends that the trial court's instruction and the verdict form may have erroneously led the jury to believe that it had to agree unanimously on the existence of a particular mitigating circumstance before considering that mitigating circumstance in its weighing process.
 
 
 118
 In Mills, the Supreme Court vacated the petitioner's sentence of death because it found a substantial probability that reasonable jurors, when receiving the judge's instructions and attempting to complete the verdict form as instructed, may have thought they were precluded from considering any mitigating evidence unless all twelve jurors agreed on the existence of a particular mitigating circumstance. Id. 108 S.Ct. at 1870. Under Maryland's sentencing scheme, if the sentencer finds that any mitigating circumstances had been proved to exist, it then proceeds to decide whether those mitigating circumstances outweigh the aggravating circumstances. Id. 108 S.Ct. at 1865-66.
 
 
 119
 The verdict form in Mills included three separate sections. The preamble to section I stated:
 
 
 120
 Based upon the evidence we unanimously find that each of the following aggravating circumstances which is marked 'yes' has been proven BEYOND A REASONABLE DOUBT and each aggravating circumstance which is marked 'no' has not been proven BEYOND A REASONABLE DOUBT.
 
 
 121
 Id. 108 S.Ct. at 1870 (Appendix to the Opinion of the Court).
 
 
 122
 Section I then set forth ten aggravating circumstances with boxes for the jury to select "yes" or "no." Id. 108 S.Ct. at 1871. Section II of the form stated, in part:
 
 
 123
 Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist by A PREPONDERANCE OF THE EVIDENCE and each mitigating circumstance which is marked 'no' has not been proven by A PREPONDERANCE OF THE EVIDENCE.
 
 
 124
 Id.
 
 
 125
 Section II listed eight mitigating circumstances with boxes marked "yes" or "no." Id. 108 S.Ct. at 1871-72. Section III stated:
 
 
 126
 Based on the evidence we unanimously find that it has been proven by A PREPONDERANCE OF THE EVIDENCE that the mitigating circumstances marked 'yes' in Section II outweigh the aggravating circumstances marked 'yes' in Section I.
 
 
 127
 Id. 108 S.Ct. at 1872 (emphasis added).
 
 
 128
 This statement was likewise followed by boxes for the jury to select "yes" or "no." Id.
 
 
 129
 The Court found that this form and the trial court's instruction suggested that jurors could only consider those mitigating circumstances which they unanimously agreed existed. Id. 108 S.Ct. at 1870. The Court concluded that failure to give consideration to a mitigating circumstance that fewer than all jurors found to exist violated the principle that the sentencer not be "precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id. 108 S.Ct. at 1865 (emphasis in original). See also McKoy v. North Carolina, --- U.S. ----, 110 S.Ct. 1227, 1234, 108 L.Ed.2d 369 (1990) (unanimity requirement on existence of mitigating factors impermissibly limits juror's consideration of mitigating evidence and is, therefore, unconstitutional).
 
 
 130
 Last term, the Supreme Court clarified the legal standard for reviewing jury instructions claimed to restrict impermissibly a jury's consideration of relevant evidence. The proper standard is "whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde v. California, --- U.S. ----, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). The Court explained that a capital sentencing proceeding is not inconsistent with the Eighth Amendment if the "reasonable likelihood" standard is met because this standard balances the strong policy in favor of accurate determination of the appropriate sentence in a capital case with the "equally strong policy against retrials years after the first trial where the claimed error amounts to no more than speculation." Id. In Boyde, the Court held that the trial court's instruction that the jury "consider ... [a]ny other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime" and its definition of "extenuate" as "to lessen the seriousness of a crime as by giving an excuse" did not prevent the jury from considering evidence about the defendant's background and character as mitigating circumstances. Id. 110 S.Ct. at 1199.
 
 
 131
 In this case, the trial court stated in its instructions during the sentencing phase:
 
 
 132
 The verdict, of course, must be unanimous. Again, if you find unanimously, beyond a reasonable doubt, the aggravating circumstance that I have mentioned, the only one that's applicable, that the victim was a prosecution witness to a felony and it was committed and he was murdered so that he would not testify, that is an aggravating circumstance. If you find that aggravating circumstance and find no mitigating circumstances or if you find that the aggravating circumstance which I mentioned to you outweighs any mitigating circumstance you find, your verdict must be the death penalty. If, on the other hand, you find that the Commonwealth has not proven an aggravating circumstance beyond a reasonable doubt or if they have, that the mitigating circumstances outweight (sic) the aggravating circumstances, then you must bring in a verdict of life imprisonment.
 
 
 133
 ....
 
 
 134
 ... Under the law, as I said, you are obligated by your oath of office to fix the penalty at death if you unanimously agree and find beyond a reasonable doubt that there is an aggravating circumstances (sic) and either no mitigating circumstance or that the aggravating circumstance outweighs any mitigating circumstances.
 
 
 135
 App. at 204, 207.
 
 
 136
 Additionally, the jury completed the following verdict form:
 
 
 137
 1. We the jury unanimously sentence the defendant to: [X] death __ life imprisonment.
 
 2. (To be used in the sentence if death)
 We the jury have found unanimously:
 
 138
 __ at least one aggravating circumstance and no mitigating circumstance. The aggravating circumstance is _______.
 
 
 139
 [X] the aggravating circumstance outweighs [the][20] mitigating circumstances. The aggravating circumstance is [the murdering of a prosecution witness to prevent testimony in a felony case.][21]
 
 
 140
 Id. at 216.
 
 
 141
 The challenged instructions were not defective. Neither the court nor the verdict sheet stated that the jury must unanimously find the existence of particular mitigating circumstances or that the jury could weigh only those mitigating circumstances which it found unanimously. Thus, Mills is clearly distinguishable. Additionally, the trial court correctly instructed the jury that its verdict must be unanimous. This instruction in no way precluded the jury's consideration of relevant evidence in arriving at that verdict.
 
 
 142
 The verdict form here did not limit the mitigating circumstances the jury could consider. Notably, the language on the verdict form was that:
 
 
 143
 We the jury have found unanimously ... at least one aggravating circumstances and no mitigating circumstances. The aggravating circumstance is....
 
 
 144
 This language requires that the jury's conclusion on the particular aggravating circumstance must be unanimous. The absence of a similar instruction for mitigating circumstances indicates that unanimity is not required. In fact, the lack of specificity in the form's reference to mitigating circumstances cuts against Zettlemoyer's position. Though the jury was obliged to specify the aggravating circumstance it found, it had no such duty with respect to mitigating circumstances, thus suggesting that consideration of mitigating circumstances was broad and unrestricted.
 
 
 145
 The court's instruction that "if you unanimously agree and find beyond a reasonable doubt that there is an aggravating circumstances (sic) and either no mitigating circumstance or that the aggravating circumstance outweighs any mitigating circumstances" indicates only that the jury's ultimate conclusion must be unanimous, not that each interim step in its deliberations be unanimous. That the jury must unanimously agree that the aggravating must outweigh the mitigating is not the same as unanimously agreeing that a mitigating factor exists. There is no support for Zettlemoyer's suggestion that a reasonable jury might construe the foregoing to mean that it must unanimously find mitigating circumstances. Accordingly, Zettlemoyer has failed to show that there is a reasonable likelihood that the jury applied these instructions in a way that precluded its consideration of any relevant mitigating evidence.[22]4. Life Sentence Instruction
 
 
 146
 We next turn to Zettlemoyer's contention that the trial court failed to instruct the jury that, in the event it could not unanimously agree that the death penalty should be imposed, the court would impose a life sentence, as required by 42 Pa.Cons.Stat.Ann. Sec. 9711(c)(1). At the outset of our discussion on this point we note that we are perplexed by the contention, as the court expressly told the jury that it would decide whether the penalty would be "death or life imprisonment." App. at 200. Therefore the argument at most goes to the form not the substance of the instructions, as the jury could not have possibly been misled. But we will nevertheless treat the matter as though there had been a section 9711(c)(1) violation.
 
 
 147
 At least one state trial court has interpreted this section to require an instruction on the matter from the trial court. See Commonwealth v. Gabler, Crim.Div. CC 8104539 (C.C.P.Allegheny Oct.1988). Nonetheless, "a state court's misapplication of its own law generally does not raise a constitutional claim cognizable in a federal habeas proceeding." Grace v. Butterworth, 635 F.2d 1, 4 (1st Cir.1980), cert. denied, 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981) (citing Beck v. Washington, 369 U.S. 541, 554, 82 S.Ct. 955, 963, 8 L.Ed.2d 98 (1969)). "As stated by the Supreme Court, '[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.' " Smith v. Zimmerman, 768 F.2d 69, 71 (3d Cir.1985) (citations omitted).
 
 
 148
 This alleged omission did not raise an error of constitutional dimension. It did not give the jury unbridled discretion nor did it limit the jury's consideration of all mitigating evidence in determining whether death was the appropriate sentence. Blystone v. Pennsylvania, 110 S.Ct. at 1083 (individualized sentencing requirement met by allowing jury to consider all relevant mitigating evidence); Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (death penalty may not be imposed under procedures that create substantial risk it will be inflicted in arbitrary and capricious manner). Inasmuch as the alleged omission raises only issues of state law, we have no authority to grant relief by reason of it.[23]
 
 E. Exhaustion of State Remedies
 
 149
 Although neither party raises the issue of exhaustion of state remedies, our review of the available record reveals that Zettlemoyer may not have pursued certain constitutional claims through the state supreme court level and may have raised slightly different constitutional claims in his state court proceedings. However, inasmuch as exhaustion is a rule of comity and not a jurisdictional requirement, we may decide the merits of an unexhausted claim. Thus, in Granberry v. Greer, the Court indicated that: "Although there is a strong presumption in favor of requiring the prisoner to pursue his available remedies, his failure to do so is not an absolute bar to appellate consideration of his claims." 481 U.S. 129, 131, 107 S.Ct. 1671, 1674, 95 L.Ed.2d 119 (1987). Because the state did not raise lack of exhaustion in the district court,
 
 
 150
 [t]he State's omission in such a case makes it appropriate for the court of appeals to take a fresh look at the issue. The court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim.
 
 
 151
 Id. at 134, 107 S.Ct. at 1675.
 
 
 152
 The Court set forth the standards for a court of appeals to determine whether strict compliance with the exhaustion doctrine was desirable:
 
 
 153
 If, for example, the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency make it appropriate for the court to insist on complete exhaustion to make sure that it may ultimately review the issue on a fully informed basis. On the other hand, if it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served even if the State fails to raise the exhaustion defense, the district court denies the habeas petition, and the court of appeals affirms the judgment of the district court forthwith.
 
 
 154
 Id. at 134-35, 107 S.Ct. at 1675.
 
 
 155
 In light of our conclusions that the Pennsylvania death penalty statute is not unconstitutional as applied to Zettlemoyer and that his claims of ineffective assistance of counsel and error by the trial court are not meritorious, we conclude that the interests of comity and federalism have been better served by our having addressed the merits of his claims rather than requiring a series of additional state and district court proceedings before doing so. Zettlemoyer's federal claims do not raise questions of unresolved Pennsylvania law; therefore, principles of comity are not compelling here. Furthermore, the Pennsylvania courts have already considered this case at length. Finally, we observe that the proceedings involving Zettlemoyer are a decade old and we recoil from the idea of protracting them for no good reason.
 
 III. CONCLUSION
 
 156
 In sum, we find that Zettlemoyer's challenge to the Pennsylvania Death Penalty statute as applied to him is without merit. Likewise, his claims of ineffective assistance of counsel and error by the trial court do not entitle him to relief by writ of habeas corpus. Accordingly, the order of the district court will be affirmed.
 
 
 157
 SLOVITER, Circuit Judge, dissenting.
 
 
 158
 The underlying facts in every death penalty case present a sordid story, and this case is no exception. Zettlemoyer's murder of DeVesco, uncontested at trial and before us, was base. Although Zettlemoyer's habeas counsel makes a valiant effort to challenge the conviction on the ground of ineffective assistance of counsel, I agree with the majority that in the end this argument is not persuasive.
 
 
 159
 Zettlemoyer's trial counsel, a public defender appointed to defend him, apparently conceived the strategy of relying upon one expert witness, Dr. Schneider, to substantiate a defense of diminished capacity. Dr. Schneider was not competent to testify to support such a defense which, under Pennsylvania law, applies to a defendant who does "not possess sufficient mental capacity to form the specific intent required for a conviction of murder of the first degree." Commonwealth v. Walzack, 468 Pa. 210, 360 A.2d 914, 916 (1976). Instead of presenting a witness who could testify to any possible "mental disorders affecting the cognitive functions necessary to formulate a specific intent," Commonwealth v. Weinstein, 499 Pa. 106, 451 A.2d 1344, 1347 (1982), the defense relied on Dr. Schneider who could only testify to Zettlemoyer's personality disorder. Zettlemoyer does not challenge the correctness of the trial court's ruling that such evidence, going to the "irresistible impulse" defense which Pennsylvania does not accept, was inadmissible. I agree with the majority that in the absence of any showing of the availability of evidence to support the diminished capacity defense and in the face of overwhelming evidence that Zettlemoyer had the specific intent to kill, there is simply no basis for the claim of ineffective assistance of counsel at the guilt phase.
 
 
 160
 I part company with the majority, however, over the treatment of the claim of ineffective assistance of counsel at the penalty phase. Zettlemoyer argues that the paltry case presented on his behalf was the product of ineffective assistance of counsel. The majority, without the benefit of any evidence presented at a hearing, either state or federal, has decided that counsel acted reasonably in the sentencing phase. Although, as I suggest hereafter, I believe it is probable that I would reach a contrary conclusion, I am reluctant to draw any conclusion without the usual hearing. Therefore, I believe that the principal question before us is whether the district court had a duty to hold an evidentiary hearing so that this issue could be explored.
 
 
 161
 Counsel for the state cites no capital case in which a defendant who claims ineffective assistance of counsel at the sentencing stage has not been afforded at least one evidentiary hearing on that claim, either as part of the state post-conviction proceeding or in federal court on a habeas petition. Surprisingly, the majority overlooks the singularity of its decision to bypass the usual process by which a trial judge decides whether counsel's performance fell "within the wide range of reasonable professional assistance," Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), after an evidentiary hearing at which trial counsel explains the strategy of his or her trial conduct. Instead, without the benefit of such a post hoc explanation the majority undertakes to make the requisite analysis itself, and reaches what for me are two startling conclusions: first, that Zettlemoyer's attack on trial counsel for making a "perfunctory" case for his life "is completely unfounded," Maj. op. at 300, and second, that "it would have been improper" to have had an evidentiary hearing on the claim of counsel's ineffectiveness at the sentencing stage. Maj. op. at 300. I proceed to explore both conclusions, which are central to the disposition of this appeal.
 
 
 162
 The Supreme Court established the general standards to be used by a federal habeas court in deciding whether to grant an evidentiary hearing in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Of particular relevance to this case, a hearing is required if "for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." Id. at 313, 83 S.Ct. at 757.
 
 
 163
 In United States v. Dawson, 857 F.2d 923 (3d Cir.1988), we outlined the more particularized standard to be used when considering whether a hearing was required on a claim of ineffective assistance of counsel as follows:
 
 
 164
 First, we must determine whether the district court considered as true all appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel.... If a nonfrivolous claim does not conclusively fail either prong of the Strickland test, then a hearing must be held.
 
 
 165
 Id. at 927-28 (emphasis in original).
 
 
 166
 The district court dealt with this particular claim of Zettlemoyer's in a single paragraph. Although the court rejected it as without merit, it did not state that it regarded the claim as frivolous. Because the majority does not remand for an evidentiary hearing, it apparently views Zettlemoyer's allegations as frivolous or deems that they failed to show ineffective assistance of counsel at the penalty phase. I believe that either conclusion is unsupported by the record before us.
 
 
 167
 The externalities give some indication of the extent of the case made for Zettlemoyer's life. On April 24, 1981, at 11:36 a.m., the jury found Zettlemoyer guilty of first-degree murder. App. at 215. The case proceeded immediately to the penalty phase. There was a sidebar conference at which counsel and the court discussed stipulations as to aggravating and mitigating circumstances, defense counsel presented one witness, Zettlemoyer's father, whose direct testimony takes eight transcript pages, there was cross-examination occupying three pages, the case recessed so that the jury could lunch, counsel presented final arguments to the jury, the court gave the jury its charge, the jury deliberated, and it returned with a death sentence at 5:31 p.m. on the same day.
 
 
 168
 Of course, the fact that Zettlemoyer's fate was decided in the span of six hours is not alone evidence of "perfunctoriness." We must instead examine the substance of the case presented by counsel to the jury in an attempt to convince them that there were mitigating circumstances to outweigh the one aggravating circumstance present, that DeVesco was to have been a witness against Zettlemoyer on a robbery charge.
 
 
 169
 Zettlemoyer argues that Dr. Schneider should have been recalled to testify at the penalty hearing. The majority holds that the failure to do so was not ineffective assistance because Dr. Schneider was the last witness at the trial phase, and the court instructed the jury to consider in the penalty phase all of the evidence from both sides that it heard during the trial in chief. However, the majority overlooks that the focus of Dr. Schneider's testimony at trial was to establish a diminished capacity defense, not to show mitigating circumstances.
 
 
 170
 Dr. Schneider testified that he interviewed Zettlemoyer on three separate occasions for a total of eight hours and conducted seven different tests on him, and that based on these tests, he concluded that Zettlemoyer showed normal intelligence overall but "deficits" in common sense and practical judgment, particularly as they relate to interpersonal relationships. Dr. Schneider testified that Zettlemoyer showed no signs of organic damage to his brain or central nervous system and that he is not psychotic, meaning he does not grossly distort reality, but that "under stress this man will lose control and lose judgment." App. at 133. Dr. Schneider continued, saying that Zettlemoyer "has a limited ability to tolerate adversity, that too much emotional stimulation may precipitate a loss in judgment, perhaps even to a psychotic proportion." App. at 134-35. He described Zettlemoyer as "self centered" and "autistic" and "an individual who has been protected and indulged to the point where he has not developed adequate skills to cope or meet with the normal pressures, demands and responsibilities of everyday living." App. at 135. The overall "diagnostic impression" was of "a schizoid personality with paranoid features." App. at 137. Dr. Schneider explained that schizoid meant a personality that was unusually detached, unemotional, and reclusive, with little social involvement.
 
 
 171
 Dr. Schneider described Zettlemoyer's inability to complete anything successfully as a "pressure cooker syndrome," and that "[i]f you don't have a release valve it will blow and that's where I believe that the emotional disturbance, in addition to the personality disorder, may have resulted in the behavior." App. at 142. Again, "[t]here is sufficient evidence to suggest that he has not met with success in any field of endeavor. If you take that kind of foundation and build upon that a number of stressful situations, a number of powerful factors over which he had no control, then you are going to get a result which can be catastrophic." App. at 144. Dr. Schneider stated that the stressful situations pertinent to Zettlemoyer immediately before October 13, 1980 were the publicity over "the robbery," the embarrassment he brought upon his family, particularly his mother, his debts, and rejection by his girlfriend/fiance. App. at 145.
 
 
 172
 Finally, defense counsel asked Dr. Schneider whether Zettlemoyer was capable of fully forming the specific intent which is required for a willful, deliberate and premeditated act, the state objected, and, after a sidebar conference, the court sustained the state's objection. Thus, Dr. Schneider's testimony on Zettlemoyer's behalf in the guilt phase ended with a discredited whimper, rather than a bang, particularly since it was followed by grueling and effective cross-examination designed to show that Zettlemoyer knew the nature and quality of his act.
 
 
 173
 At sentencing, the state had stipulated to two statutory mitigating factors, the absence of a prior criminal record and Zettlemoyer's age (25). Thus it appears that the entire sentencing phase strategy of defense counsel was to try to establish the additional mitigating factor that "[t]he defendant was under the influence of extreme mental or emotional disturbance." 42 Pa.Cons.Stat.Ann. Sec. 9711(e)(2) (Purdon 1982).
 
 
 174
 In denying an evidentiary hearing on Zettlemoyer's claim of ineffective assistance of counsel at sentencing, the district court held that it was unnecessary to recall Dr. Schneider because "the petitioner's father testified during the sentencing phase about petitioner's mental and emotional health, thus reinforcing in the minds of the jury petitioner's asserted diminished capacity defense." Opinion of May 31, 1988, slip op. at 30 (emphasis added). It is thus evident that the district court failed to recognize that the diminished capacity defense which Dr. Schneider had sought unsuccessfully to establish during the guilt phase, and which itself can be the basis of a mitigating circumstance, see 42 Pa.Cons.Stat.Ann. Sec. 9711(e)(3), is distinct from the mitigating circumstance of "extreme mental or emotional disturbance." Id. Sec. 9711(e)(2). Zettlemoyer makes this distinction in paragraphs 139 through 142 of his petition for habeas corpus, quoted in Maj. op. at 302 n. 14.
 
 
 175
 Although Dr. Schneider's testimony may have contained the evidentiary predicate for an "emotional disturbance" mitigating circumstance, the jury did not hear Dr. Schneider's testimony during the guilt phase from the perspective of whether Zettlemoyer was troubled enough so that his life should be spared, and thus I find it difficult based on what is before us to characterize the defense counsel's decision not to recall Dr. Schneider as a reasonable one.
 
 
 176
 The majority relies on Clozza v. Murray, 913 F.2d 1092 (4th Cir.1990), to support its conclusion that counsel was not ineffective in failing to recall Dr. Schneider. Clozza is inapposite. There the court rejected the claim of ineffective assistance of counsel for failing to recall a psychiatrist who had testified at the guilt phase because the state court had made findings and reached the conclusion that counsel's tactic was reasonable trial strategy. That decision was made only after the state court held an evidentiary hearing on the ineffective assistance of counsel claim in a post-conviction habeas corpus proceeding. During that hearing, the doctor testified that his testimony at sentencing would not have added anything new, and it was revealed that the doctor's testimony had been based on the understanding that the defendant had been drunk at the time of the offense. Because Clozza had testified during the guilt phase that he was sober, the Court of Appeals discussed the strategic dilemma Clozza's counsel would have faced had the psychiatrist been recalled to testify. Id. at 1102.
 
 
 177
 In contrast, no such state court hearing was held in this case, and thus trial counsel has never been called upon to explain his enigmatic decision to rest on Dr. Schneider's testimony given during the guilt phase. I find it significant that in the majority's reiteration of its conclusion that it was reasonable for defense counsel not to recall Dr. Schneider, the majority never once suggests that, as in Clozza, Dr. Schneider's testimony at the sentencing phase could have been harmful to defendant. Recalling Dr. Schneider would have given the defense the opportunity to rehabilitate him in the eyes of the jury. The majority has not and cannot reasonably disagree that such a move would have enabled the defense to emphasize Zettlemoyer's extreme mental and emotional disturbance at the time of the crime. Thereafter, the jury would have proceeded to its deliberations focused on Dr. Schneider's testimony about this statutory mitigating circumstance rather than focused on his earlier testimony that the defendant was unable to form a specific intent to kill, which the jury had already found unpersuasive. I cannot discount the possibility that Dr. Schneider's recall might have tipped the scales in favor of a decision by the jury to spare Zettlemoyer's life.
 
 
 178
 Zettlemoyer also claims that trial counsel should have presented additional evidence at the penalty phase. As I noted previously, the only live testimony during the sentencing phase was that of Zettlemoyer's father, who, in his brief testimony, reiterated his wife's earlier testimony that Zettlemoyer had personality problems when he was a boy and had poor relations with the rest of the family members. He testified that he had one or two discussions with his son during the two weeks before the murder, that Keith Zettlemoyer discussed "all the problems that he was having and how he felt overwhelmed," App. at 184, and that he should have taken responsibility to get psychiatric or psychological help for his son. Zettlemoyer's father also mentioned that his son "has shown considerable remorse" over the crime, that "he's taken to religion to some extent which is something he never did before," id., and that he believed his son was suffering under extreme mental or emotional disturbance.
 
 
 179
 It is not apparent from the record why counsel would have relied solely on the testimony of Zettlemoyer's father. Zettlemoyer's father's testimony shows that he was only peripherally involved with his son and had "only mild" knowledge that his son's fiance had broken off with him, App. at 187, a patently traumatic event. He was obliged to admit that he was only aware of the problems in his son's personal life and his financial problems "[t]o some degree, not to the degree that my wife would have been aware of them but I know he had them." App. at 186. Under these circumstances, it is not difficult to see why the jury would not be overly impressed with the only testimony put before them on the critical issue of life or death sentencing.
 
 
 180
 I cannot understand why counsel would not have recalled Zettlemoyer's mother, since her testimony, like Dr. Schneider's, during the guilt phase was more inclined to the diminished capacity defense, whereas her penalty phase testimony could have emphasized the mitigating circumstance of "extreme mental or emotional disturbance." It is also not evident why counsel would not have called Zettlemoyer's friends, co-workers, or his former fiance to support the claim of overwhelming emotional disturbance. Certainly the absence of such supporting testimony could not have escaped the jury's notice.
 
 
 181
 Even more inexplicable is the complete failure of the defense to attempt to make any kind of case at sentencing to support the catch-all mitigating circumstance, which permits the defense to present and the jury to consider "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.Cons.Stat.Ann. Sec. 9711(e)(8). If this was the result of a defense trial strategy, its logic is opaque and defense counsel should be obliged to provide elucidation.
 
 
 182
 The majority rules that no evidentiary hearing is called for on this issue first, because it believes the petition for habeas corpus does not allege failure to produce other witnesses as a basis for the claim of counsel's ineffectiveness and second, because petitioner has failed to point to specific significant mitigating evidence. The habeas petition does in fact complain of ineffectiveness at the sentencing phase on this basis.[1] Although I agree that the failure to point to specific evidence that would have been available is troubling, I do not find it dispositive in this case. The habeas court is free to "direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." Rule 7(a), Rules Governing Sec. 2254 Cases. Both the state court and the district court considered only the failure to recall Dr. Schneider. Had the district court considered paragraph 143 of the habeas petition and found it insufficiently specific, the rules provide ample opportunity for further elucidation.
 
 
 183
 I do not agree that our decision in Mayberry v. Petsock, 821 F.2d 179 (3d Cir.), cert. denied, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987), compels the denial of an evidentiary hearing at which counsel would be obliged to explain his underlying trial strategy.[2] In Mayberry, where we affirmed the district court's denial of a hearing on Mayberry's habeas corpus petition at which he sought to compel discovery from the state on his contention that state officials had obstructed him from pursuing his appeal, we held, and reiterate here, that "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing." Id. at 185.
 
 
 184
 In this case, we have substantially more. We have before us a plainly unenthusiastic case made on behalf of Zettlemoyer's life. I find it incomprehensible that there were no character witnesses who could testify to some redeeming virtue on behalf of a young man who had no criminal record. Is it possible that there was no clergyman, former employer, teacher, neighbor, or friend who was willing to come forward to show that despite his crime, Zettlemoyer's life is still worth preserving? If so, then counsel should explain that he searched for such testimony, and that it was unavailable, or that there was a reasonable basis not to present any such testimony.
 
 
 185
 Surely even the majority must acknowledge that as appellate judges we have the experience to spot a nonchalant, languid and lackluster defense at sentencing. The question before us is not whether this was the case, but why. Unlike the majority, I will not put an explanation into defense counsel's mouth which he has never given in either testimony or by affidavit filed at any time in any place.
 
 
 186
 Based on what is before us, this does not appear to be a case like Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), where the failure of the attorney to present any mitigating evidence at all at the penalty phase was the result of trial counsel's strategic decision that the witnesses, including the petitioner himself, necessary to present such evidence would ultimately be more damaging than helpful. Nor is this a case like Coleman v. Brown, 802 F.2d 1227 (10th Cir.1986), cert. denied, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987), where the court ruled that an evidentiary hearing by the habeas court was not warranted because it was clear from trial counsel's testimony at the state post-conviction proceedings that he had made a strategic choice not to put on certain witnesses at the penalty phase. If this is a case like Burger or Coleman where counsel made such strategic decisions, then the reasonableness of that conduct can be explored at a hearing, such as the one the district court held in Burger or the state court held in Coleman where the respective counsel testified.
 
 
 187
 On the other hand, it may be that an evidentiary hearing will show, as Zettlemoyer charges, that counsel was dispirited following the jury verdict of guilty to first-degree murder and, as a result, presented what appears to me to be a plainly anemic case. This may be a case such as Blake v. Kemp, 758 F.2d 523 (11th Cir.), cert. denied, 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985), where the court ruled, based on evidence presented at the habeas hearing, that trial counsel's strategy to concentrate on winning the guilt phase rather than prepare for the sentencing phase and his failure to seek out and prepare any witnesses who could present character evidence at the most critical stage of the proceeding warranted the grant of a writ of habeas corpus.
 
 
 188
 As the court stated in Kubat v. Thieret, 867 F.2d 351, 369 (7th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989),
 
 
 189
 [D]efense counsel must make a significant effort, based on reasonable investigation and logical argument, to ably present the defendant's fate to the jury and to focus the attention of the jury on any mitigating factors. Mitigating factors brought out at trial might be emphasized, a coherent plea for mercy might be given, or new evidence in mitigation might be presented. But counsel may not treat the sentencing phase as nothing more than a mere postscript to the trial. While the Strickland threshold of professional competence is admittedly low, the defendant's life hangs in the balance at a capital sentencing hearing. Indeed, in some cases, this may be the stage of the proceedings where counsel can do his or her client the most good.
 
 
 190
 Perhaps the most analogous case to that before us is Wilson v. Butler, 813 F.2d 664, 671-72 (5th Cir.), modified on other grounds, 825 F.2d 879 (5th Cir.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1021 (1988). There, as here, the issue was the effectiveness of trial counsel at the sentencing stage of a state trial culminating in a death sentence. The court noted that while trial counsel may choose not to pursue certain avenues of investigation or strategies, those decisions must be informed ones. Because there was no evidentiary hearing held in the state court, the federal court held that the record was inadequate to establish whether trial counsel "made a considered strategic decision or whether this decision was reasonable." Id. at 672. Therefore, the court held that an evidentiary hearing by the habeas court was necessary.
 
 
 191
 Under Pennsylvania law, sustained by the United States Supreme Court, "the verdict must be a sentence of death ... if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." 42 Pa.Cons.Stat.Ann. Sec. 9711(c). Given the single aggravating circumstance that the victim was a potential witness, and the two stipulated mitigating circumstances of age and the absence of any prior significant criminal record, there was a clear chance that a forceful, well conceived, and adequately supported case at the penalty phase directed to one or two additional mitigating circumstances would have led the jury to return with a life imprisonment sentence for Zettlemoyer. There has never been any explanation why such a defense was not provided, and thus my confidence in the outcome has been undermined.
 
 
 192
 I believe that our opinion in Dawson required the district court to hold a hearing because Zettlemoyer's claim of ineffectiveness "does not conclusively fail either prong of the Strickland test." 857 F.2d at 928 (emphasis in original). The majority expresses some displeasure because a decade has passed since this murder. The majority has already satisfactorily explained the reason for the passage of time. See Maj. op. at 303. It is, however, ironic that in all this time no court has sought an explanation for the pallid case made for Zettlemoyer's life. When the decision between life and death is as fine as a razor's edge, I cannot agree with the majority that neither society nor Zettlemoyer is entitled to an objective evaluation of that explanation.[3]
 
 
 
 [1]
 The facts of the case are set out at length in the Supreme Court of Pennsylvania opinion
 
 
 [2]
 PCHA was replaced by the Post Conviction Relief Act, P.L. 336, No. 47 (April 13, 1988)
 
 
 [3]
 Zettlemoyer raised additional issues which are not before us
 
 
 [4]
 In a footnote, the court stated that it believed that Zettlemoyer's allegations could be addressed by scrutinizing the state court record; therefore, it was not necessary to have a hearing for the receipt of proof establishing the allegations. Id. at 35 n. 7
 
 
 [5]
 We exercise plenary review to the extent that we review the rulings of the district court, because that court adjudicated the matter without an evidentiary hearing so that we are not reviewing findings of fact made by that court. See Monachelli v. Warden, SCI, Graterford, 884 F.2d 749, 750 (3d Cir.1989). Thus, we effectively place ourselves in the position of the district court and we therefore describe our scope of review in terms of review of state court proceedings
 
 
 [6]
 The Court noted that Blystone, after repeated warnings from the trial judge and contrary to the advice of trial counsel, decided not to present any proof of mitigating evidence during his sentencing proceedings. Blystone v. Pennsylvania, 110 S.Ct. at 1083 n. 4. The Court recognized, however, that the trial court specifically instructed the jury that it should consider any mitigating circumstances that Blystone had proved by a preponderance of the evidence, including consideration of any mitigating evidence presented by either side during the guilt phase of the trial. Id
 
 
 [7]
 Dr. Schneider testified that he administered the Wexler Adult Intelligence test to measure capacity for understanding, recalling, using, and integrating information, and the Bender-Gestalt test to measure intellectual impairment. App. at 129-30
 
 
 [8]
 Dr. Schneider administered the Minnesota Multiphasic Personality Inventory test, which is a "self-report" personality inventory. App. at 129
 
 
 [9]
 These tests consisted of the Rorschach ink blot test, the Thematic Apperception test, the Sentence Completion test, and the House Tree Person test. App. at 130
 
 
 [10]
 By contrast, at the time of Zettlemoyer's trial, Pennsylvania had clearly rejected the defense of "irresistible impulse" as either "a device to escape criminal responsibility for one's acts or to reduce the crime or its degree." Commonwealth v. Walzack, 468 Pa. at 220 n. 16, 360 A.2d at 919 n. 16 (quoting Commonwealth v. Ahearn, 421 Pa. 311, 320, 218 A.2d 561, 566 (1966)). A person acting under an "irresistible impulse" is capable of distinguishing between right and wrong and is fully aware of the nature of his or her act, yet is unable to refrain from acting
 
 
 [11]
 The jury specifically found that Zettlemoyer murdered DeVetsco to prevent his testimony, a finding which Zettlemoyer does not challenge on this appeal
 
 
 [12]
 Additionally, as discussed infra, at 300-303, on such bald assertions and conclusory allegations, Zettlemoyer is not entitled to a hearing on the question of whether such testimony was available. Mayberry v. Petsock, 821 F.2d at 185; Barry v. United States, 528 F.2d 1094, 1101-02 (7th Cir.) (insufficiently detailed affidavit that did not demonstrate that petitioners had actual proof of allegations made is "patently insufficient" to require hearing under section 2255), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976)
 
 
 [13]
 The unfair attack on Zettlemoyer's trial counsel did not stop in his brief on the appeal. At oral argument before us, appellate counsel contended that "[t]here were no prison counselors called as witnesses" and there should have been evidence about his "conduct as a prisoner." Transcript of Oral Argument at 18. In fact, Joseph T. Mullen, a prison counselor at the Dauphin County prison, was called as a witness by Zettlemoyer at the guilt phase of the trial and described Zettlemoyer in prison, indicating that he thought Zettlemoyer was making "a sincere effort of dealing with whatever he thought, whatever he thought he was going through." Transcript of Trial, Vol. II, at 614. Furthermore, Linda B. Hargrove, a counselor at Dauphin County Crisis Intervention, also testified. Id. at 625. She explained how Zettlemoyer's relationship with a woman had ended and described his depression from that and financial problems. Id. at 631. She also described his mental improvement and even the improvement in his appearance while in the prison. Id. at 632-33. This evidence, of course, was incorporated by reference into the sentencing phase. At oral argument before us, Zettlemoyer's counsel said that "the core of our argument" was predicated on "two mitigating factors," Zettlemoyer's "mental or emotional instability" and his conduct during his childhood and with his wife. Transcript at 13-16. There was testimony about these matters before the jury
 
 
 [14]
 The lack of basis for an evidentiary hearing on the competency of counsel at the sentencing hearing is demonstrated by the petition for a writ of habeas corpus which we set out in full insofar as germane to this point:
 (8) Mr. Zettlemoyer's defense counsel was ineffective in the sentencing phase.
 
 
 [137]
 The Commonwealth stipulated to the existence of two statutory mitigating circumstances:
 (a) Mr. Zettlemoyer had no significant history of prior criminal convictions;
 (b) Mr. Zettlemoyer was 25 years of age. 42 Pa.C.S. Sec. 9711(e)(1) and (4).
 
 
 [138]
 Mr. Zettlemoyer's defense counsel then called only one witness, Richard Zettlemoyer, who was asked to present only limited testimony about his son's mental and emotional health, in part by adopting the prior testimony of Mr. Zettlemoyer's mother. (NT Sentencing 14-15; 18)
 
 
 [139]
 Dr. Schneider was available and competent to offer expert opinion testimony on mitigating circumstances of central importance to Mr. Zettlemoyer's case:
 (a) Mr. Zettlemoyer was under the influence of extreme mental or emotional disturbance at the time of the crime; and
 (b) Mr. Zettlemoyer had a substantially impaired capacity to appreciate the criminality of his conduct or conform his conduct to the law's requirements.
 
 
 [42]
 Pa.C.S. Sec. 9711(e)(2) and (3)
 
 
 [140]
 Additionally, the testimony by Dr. Schneider at the trial of the Mr. Zettlemoyer's guilt or innocence demonstrates that his opinion testimony at sentencing would have been admissible, relevant evidence of the Mr. Zettlemoyer's character, and of central importance to the jury's consideration of mitigation. 42 Pa.C.S. Sec. 9711(e)(8)
 
 
 [141]
 Mr. Zettlemoyer's defense counsel did not call Dr. Schneider or any other professionally qualified witness to testify respecting the mitigating circumstances of central importance to his case
 
 
 [142]
 Mr. Zettlemoyer's defense counsel was ineffective in not presenting testimony by Dr. Schneider or another professionally qualified witness respecting the pertinent mitigating circumstances
 
 
 [143]
 Mr. Zettlemoyer's defense counsel was ineffective in not presenting non-statutory evidence and argument, in support of mitigation, that the imposition of the death penalty in this case (a) would be cruel and inconsistent with the developed standards of civilized life; (b) would serve no demonstrable deterrent purpose; or (c) would be an inappropriate penalty for any other reasons
 
 
 [144]
 Mr. Zettlemoyer's defense counsel was ineffective in not asking the jury to exercise the discretion they are permitted by the United States constitution to grant mercy
 App. at 32-33.
 It will be noted that Zettlemoyer set forth no facts requiring a hearing in the foregoing pleading.
 
 
 [15]
 The situation here should be compared to that in Burger v. Kemp, 483 U.S. 776, 793, 107 S.Ct. 3114, 3125, 97 L.Ed.2d 638 (1987). There, though the petitioner did not obtain relief, at least he presented specific factual evidence in affidavit form to support his claim of ineffective assistance of counsel
 
 
 [16]
 While the dissent suggests that recalling Dr. Schneider would have given the counsel a chance to rehabilitate him, he did not need to be rehabilitated, as his evidence was not shown to be false or misleading. Indeed, in his summation to the jury at the guilt phase, the district attorney told the jury that "[w]e wholeheartedly agree with everything the psychologist said, but the psychologist can give no indication, cannot say in any way, shape or form that Keith could not form the specific intent to kill, no testimony that he could not form a specific intent to kill."
 
 
 [17]
 In Zettlemoyer's brief, he does not point to any person, either by name or generically, who should have been produced at the sentencing hearing and was not, except for Dr. Schneider
 
 
 [18]
 This may be stretching the date a bit, as his appeal may have become final on May 31, 1983, when his petition for certiorari was denied. See Penry v. Lynaugh, 109 S.Ct. at 2944
 
 
 [19]
 We are focusing on the merits of this issue, as we are aware of no Supreme Court case after Teague which made a Sawyer-type ruling in a Mills situation in a habeas case where the underlying conviction was final before Mills was decided. Mills itself was before the Supreme Court on certiorari from the Maryland Court of Appeals which exercised jurisdiction on a direct appeal from the conviction
 
 
 [20]
 The form used the word "any" at this point. The jury crossed out "any" and substituted "the"
 
 
 [21]
 The jury inserted the two X's and wrote the words "the murdering of a prosecution witness to prevent testimony in a felony case."
 
 
 [22]
 We are mindful that since Zettlemoyer's trial, the Criminal Procedure Rules Committee of the Pennsylvania Supreme Court has adopted a uniform verdict slip for capital sentencing cases, which provides, in part:
 IF, AFTER SUFFICIENT DELIBERATION, YOU CANNOT UNANIMOUSLY REACH A SENTENCING VERDICT, DO NOT COMPLETE OR SIGN THIS SLIP, BUT RETURN IT TO THE JUDGE. THE JUDGE WILL DETERMINE IF FURTHER DELIBERATIONS ARE REQUIRED; IF THEY ARE NOT, THE JUDGE WILL SENTENCE THE DEFENDANT TO LIFE IMPRISONMENT.
 See Pa.R.Crim.P. 358A (effective July 1, 1989).
 However, as the Supreme Court noted in Mills, "we are hesitant to infer too much about the prior verdict form from the [court's] well-meant efforts to remove ambiguity from the State's capital sentencing scheme." Mills, 108 S.Ct. at 1869. Considering the verdict form and the court's instructions as a whole, we find that this amendment to the verdict form was not necessary to prevent a reasonable likelihood that the jury applied these instructions in a way that precluded their consideration of any relevant mitigating evidence.
 
 
 [23]
 The authority cited for the alleged error of state law is from a three-judge common pleas court sitting in banc with one judge dissenting. We cannot be certain how the Supreme Court of Pennsylvania would view the matter, both substantively and as a matter of retroactive application. Thus, there may well have been no error of state law. Of course, there is now a specific uniform verdict sheet dealing with the matter. See note 22 supra
 
 
 [1]
 The petition alleges:
 
 
 [143]
 Mr. Zettlemoyer's defense counsel was ineffective in not presenting non-statutory evidence and argument, in support of mitigation, that the imposition of the death penalty in this case (a) would be cruel and inconsistent with the developed standards of civilized life; (b) would serve no demonstrable deterrent purpose; or (c) would be an inappropriate penalty for any other reasons
 App. at 39.
 
 
 [2]
 In any event, Mayberry, a non-capital case, cannot control our decision with respect to when an evidentiary hearing is appropriate for an attack on the sentencing phase of a capital case because "the qualitative difference of death from all other punishment requires a correspondingly greater degree of scrutiny of the capital sentence determination." California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171 (1983)
 
 
 [3]
 Zettlemoyer's claims based on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), also raise disturbing issues. I do not agree with the majority that the trial court's charge does not present a Caldwell violation. The court charged, inter alia,
 Ladies and gentlemen, you must now decide what sentence is to be imposed upon the defendant, whether it be death or life imprisonment. In a very proper sense, you are not really making that decision. You are not deciding whether he should be sentenced to death or life imprisonment. That was the law years ago and the Supreme Court of the United States declared such death penalties to be unconstitutional. I won't go into the reason. One of the theories was that it placed discretion on the jury. They could decide whether a particular individual could suffer death or life imprisonment. They have removed that burden from you. That is not what you are to decide. You are to decide whether there are certain aggravating circumstances or mitigating circumstances and depending upon how you find those circumstances, as I will explain to you, your decision follows. It must follow. If you find a certain way, a certain penalty must follow. That is the law. If, for example, as I will explain in a little more detail, you find unanimously beyond a reasonable doubt, that there is an aggravating circumstance and no mitigating circumstances or that the aggravating circumstance outweighs the mitigating circumstances, you must return a verdict of death. So the burden is not really yours.
 App. at 200-01 (emphasis added).
 Caldwell held that "the uncorrected suggestion that the responsibility for any ultimate determination of death will rest with others bears an intolerable danger that the jury will in fact choose to minimize the importance of its role." 472 U.S. at 333, 105 S.Ct. at 2642. I believe the charge given in this case may have incorrectly led the jury to believe that their discretion, which is equivalent to their "burden," had been removed and therefore it violated the underlying principle of Caldwell. However, in light of the decisions in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and Sawyer v. Smith, --- U.S. ----, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), limiting the retroactive application of new rules on habeas review, I agree with the majority that this Caldwell violation cannot be the basis for the grant of a writ of habeas corpus.
 With respect to Zettlemoyer's claim based on Mills, I, unlike the majority, believe that the jury charge ("if ... you find unanimously beyond a reasonable doubt, that there is an aggravating circumstance and no mitigating circumstances ...", App. at 204) and the verdict slip ("We the jury have found unanimously: at least one aggravating circumstance and no mitigating circumstances ... the aggravating circumstance outweighs any mitigating circumstance," App. at 216) were ambiguous as to whether juror unanimity was required for each mitigating circumstance. Therefore, I believe that the instruction and verdict slip violated the holding in Mills and McKoy v. North Carolina, --- U.S. ----, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). As with the violation of the Caldwell principle, I believe it is likely that the Supreme Court would view Mills as announcing a new rule and thus this claim also is subject to the almost insurmountable barrier on retroactive application announced in Teague.