**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1393-18T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

FRANCIS J. PRETO,

      Defendant-Appellant.

_____

          Submitted February 24, 2020 – Decided June 10, 2020

          Before Judges Ostrer and Susswein.

          On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 11-05-0884 and 08-10-1541.

          Joseph E. Krakora, Public Defender, attorney for appellant (Andrew Robert Burroughs, Designated Counsel, on the brief).

          Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Defendant, Francis Preto, appeals from the denial of his petition for post-conviction relief (PCR). In 2012, he was convicted at trial for conspiring and attempting to kill his wife and for conspiring to kill a fellow county jail inmate who had reported the murder plot to authorities. Defendant contends his trial counsel rendered ineffective assistance by not calling certain witnesses, by not effectively cross-examining his wife, and by not communicating with him about the case before trial.

After reviewing the record in light of the applicable legal principles, we reject defendant's contentions and affirm the denial of his PCR petition substantially for the reasons set forth by Judge Guy Ryan in a thorough and well-reasoned thirty-two-page opinion. As the PCR court aptly noted, defendant failed to support his contentions with competent proofs that would warrant an evidentiary hearing, much less a new trial. We conclude that defendant has not established that his trial counsel's performance was constitutionally deficient or that any potential ineffective assistance had a reasonable probability of changing the jury verdict. See generally Strickland v. Washington, 466 U.S. 668 (1984) (establishing a two-part test for addressing ineffective assistance of counsel claims).

A-1393-18T1

I.

Defendant was initially tried in early 2011. The first trial resulted in a hung jury and mistrial. When he was retried in the fall of 2012, he was represented by a different attorney than the one who represented him at the first trial. This time, the jury found defendant guilty of first-degree conspiracy to murder his wife, first-degree attempted murder of his wife, and first-degree conspiracy to murder Timothy Milton. The jury acquitted defendant of attempting to murder Milton. Defendant was sentenced to an aggregate term of 16 years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. This sentence runs consecutively to the sentence imposed on an unrelated prior conviction.

On direct appeal, we affirmed the trial convictions but remanded the matter to correct the calculation of gap-time and jail credits. State v. Preto, No. A-4212-12 (App. Div. July 8, 2016) (slip op. at 16). The Supreme Court denied certification. State v. Preto, 228 N.J. 483 (2017).

Defendant thereafter filed a pro se petition for post-conviction relief. Judge Ryan heard oral argument and thereafter issued a written opinion denying defendant's PCR petition without an evidentiary hearing. Defendant now appeals from that decision.

A-1393-18T1

II.

The facts adduced by the State at trial are recounted in our prior opinion and need not be repeated at length in this opinion. It is sufficient to note that the State presented testimony and electronically recorded conversations to prove that defendant conspired and attempted to murder both his ex-wife and a fellow inmate at the Ocean County Jail, Milton. While in jail, defendant sought Milton's assistance in a plot to murder Ms. Preto before she could divorce defendant. When defendant learned that Milton reported the murder plot to the authorities, he attempted to hire other individuals to kill Milton. The defense argued that defendant's threats were mere puffery and were made in response to a jailhouse culture that required him to act tough.

III.

Defendant presents the following contentions for our consideration:[1]

POINT I

> AS DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, HE WAS ENTITLED TO POST-CONVICTION RELIEF.
>
> (1) Trial counsel failed to ensure the exculpatory testimony of Harry Reilly.

---

[1] Defendant made several other arguments before the PCR court that he does not raise on this appeal.

A-1393-18T1

(2) Trial counsel's failure to effectively communicate with her client prejudiced his right to effective legal representation.

(3) Trial counsel failed to effectively cross-examine defendant's wife.

(4) Trial counsel failed to present the exculpatory testimony of Joseph Collins (aka "Joe Green").

(5) Trial counsel's cumulative errors denied her client effective legal representation.

POINT II

AS THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.

IV.

We begin our analysis by acknowledging the legal principles that govern this appeal. Post-conviction relief serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). A petitioner must establish grounds for relief by a preponderance of the evidence. State v. Mitchell, 126 N.J. 565, 579 (1992) (citing State v. Marshall, 244 N.J. Super. 60, 69 (Law Div. 1990)). To satisfy this burden, the petitioner must allege specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." Ibid.

A-1393-18T1

Defendant claims his trial counsel rendered constitutionally deficient representation. Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the New Jersey Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland, 466 U.S. at 686 (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987). To establish an ineffective assistance claim, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To satisfy the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The fact that a trial strategy fails to obtain for a defendant the optimal outcome is insufficient to show that counsel was ineffective. State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)).

The second prong of the Strickland test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different than if counsel had not made the errors. Id. at 694. This prong is particularly demanding. "The error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." State v. Allegro, 193 N.J. 352, 367 (2008) (quoting State v. Castagna, 187 N.J. 293, 315 (2006)).

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with his or her ineffective assistance claim. Preciose, 129 N.J. at 462–63. The PCR court should grant an evidentiary hearing when a defendant is able to prove a prima facie case of ineffective assistance of counsel, there are material issues of disputed fact that must be resolved with evidence outside of the record, and the hearing is necessary to resolve the claims for relief. R. 3:22-10(b). To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland test. Preciose, 129 N.J. at 463. "[C]ourts should view the facts in the light most favorable to a defendant to

determine whether a defendant has established a prima facie claim." Id. at 462–63.

Importantly for purposes of this appeal, "[i]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that [he or she] was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The petitioner must allege specific facts sufficient to support a prima facie claim. Id. at 168 (citing Mitchell, 126 N.J. at 589). Furthermore, the petitioner must present these facts in the form of admissible evidence. In other words, the relevant facts must be shown through "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Id. at 170; see also R. 3:22-10(c) ("Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification . . . and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing.").

As a general proposition, we defer to a PCR court's factual findings "when supported by adequate, substantial and credible evidence." State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, when the trial court does not hold an evidentiary hearing, we "may exercise de novo review over the factual inferences drawn from the

documentary record." Id. at 421 (citing Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 n.4 (3d Cir. 1991)). Similarly, we review de novo the PCR court's legal conclusions. State v. Nash, 212 N.J. 518, 540–41 (2013) (citing Harris, 181 N.J. at 415–16).

V.

A.

Defendant argues his trial counsel was ineffective for failing to call Harry Reilly as a witness. Defendant claims Reilly would have provided testimony supporting defendant's theory that he was merely "talking tough" when he was discussing murdering his wife and Milton. Additionally, defendant argues Reilly would have testified that the conspiracy between himself, defendant, and Milton was to steal "WaveRunners"[2] from Ms. Preto, not to kill her.

While Reilly was on defendant's witness list, counsel and the trial court were unable to locate Reilly during trial after corresponding with the Ocean County Jail and the probation department. Defendant contends his trial counsel should have pursued Reilly's whereabouts more aggressively. We note that

---

[2] "WaveRunner" is a trademarked name for a type of personal watercraft produced by Yamaha Motor Corporation.

 A-1393-18T1

defendant was unable to locate Reilly while preparing his PCR and acknowledges he does not even know if Reilly is still alive.

We reject defendant's PCR claim as nothing more than a "bald assertion[]." Cummings, 321 N.J. Super. at 170. As we have noted, a defendant must support the factual assertions with competent proofs, i.e., "affidavit[s] or certification[s] pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant." R. 3:22-10(c). Here, defendant failed to supply an affidavit or certification made by himself, his first trial attorney, or Reilly summarizing the testimony Reilly would have provided had he been called as a witness.

Defendant's explanation at oral argument is not comparable to an affidavit or certification pursuant to Rule 1:4-4. Certifications or affidavits submitted pursuant to Rule 1:4-4(b) subject the declarant to punishment if their statements are willfully false. Defendant was not under oath when he spoke to the court concerning Reilly's potential testimony. Accordingly, the PCR court correctly determined that defendant's contentions concerning Reilly are unsupported in the record. Additionally, Judge Ryan found it unlikely Reilly could have provided testimony supporting defendant's "talking tough" defense because the trial court had precluded defendant from calling other witnesses to provide similar testimony and that decision was affirmed on direct appeal.

 A-1393-18T1

Even putting aside that defendant's arguments with respect to Reilly are bald assertions, defendant's own electronically recorded statements would have contradicted Reilly's hypothesized testimony. In a jailhouse conversation recorded on July 2, 2008, for example, defendant and Milton discussed the details of the plan to kill Ms. Preto, including Milton's payment for killing Ms. Preto and the logistics of dumping her body. Defendant told Milton he would pay $10,000 for Milton "to take her out." At no point in any of the recorded conversations between defendant and Milton does anyone refer to a scheme to steal personal watercraft.

We add that in order to succeed on an ineffective assistance claim based on trial counsel's failure to call a witness; a defendant must "overcome the presumption that, under the circumstances," the failure to call the witness "might be considered sound trial strategy." State v. Arthur, 184 N.J. 307, 319 (2005) (quoting Strickland, 466 U.S. at 689). Determining which witnesses to call to the stand is an "an art." Id. at 321 (quoting Strickland, 466 U.S. at 693).

> A trial attorney must consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment by prior inconsistent statements or other means, whether the witness is likely to contradict the testimony of other witnesses the attorney intends to present and thereby undermine their credibility, whether the trier of fact is

likely to find the witness credible, and a variety of other tangible and intangible factors.

[Id. at 320–21.]

Given the difficulty inherent in selecting witnesses, a court's review of counsel's decision must be "highly deferential." Id. at 321 (quoting Strickland, 466 U.S. at 689).

In this instance, in exercising her professional judgment, defendant's trial counsel was permitted, if not obligated, to consider the credibility of Reilly's testimony in light of the other evidence presented at trial. Id. at 320–21. Defendant explained at oral argument that in preparing for defendant's second trial, his second trial counsel read all the materials supplied by defendant's first trial counsel. Counsel's decision to not make further effort to locate and subpoena Reilly was thus made with an understanding that Reilly would have provided testimony contradicted by defendant's own admissions, reducing Reilly's credibility and the value of his testimony. Ibid. In these circumstances, we agree with the PCR court that defendant has provided no basis for concluding that counsel's performance with respect to this potential witness was unreasonable or otherwise constitutionally deficient.

Relatedly, in assessing the potential impact of an absent witness, we must consider the defendant's overall trial strategy. See State v. L.A., 433 N.J. Super.

1, 16 (App. Div. 2013) (noting that the importance of an absent witness must be judged in light of the "interplay of the uncalled witness[] with the actual defense witnesses called" (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996))). Throughout trial, defendant argued his threats were puffery and the product of the "talking tough" culture in the jail. Potential testimony from Reilly that defendant was planning to steal personal watercraft from his ex-wife would not have supported defendant's "talking tough" theory and could have distracted the jury from counsel's principal defense strategy.

In sum, given the uncertainty concerning Reilly's testimony, as well as Reilly's criminal record and history of drug addiction, we agree with the PCR court's conclusion that it was reasonable that counsel did not further pursue Reilly's whereabouts.

B.

Defendant next asserts that his trial counsel was ineffective for failing to call Joseph Collins as a witness. Defendant claims Collins was familiar with defendant's case and could have provided helpful testimony. Collins, who is reputed to be an upper echelon gang member, testified in a Rule 104 hearing after which defendant and trial counsel agreed not to call him as a witness at trial. Defendant now contends his counsel rendered ineffective assistance by

13

talking him out of calling Collins as a witness. Specifically, defendant contends that Collins's gang affiliation should not have been a sufficient reason for counsel to convince defendant to not have Collins testify.

As we have noted, a PCR court's review of counsel's decision not to call a witness is "highly deferential." Arthur, 184 N.J. at 321 (quoting Strickland, 466 U.S. at 689). Applying that deferential standard, we agree with Judge Ryan's conclusion that trial counsel was not ineffective in determining not to call Collins as a trial witness. Judge Ryan aptly noted that Collins's testimony was likely in the same vein as other inadmissible testimony relating to defendant's "talking tough" defense. Although Collins may have been able to provide some admissible testimony concerning his encounters with defendant while they were both in prison, the PCR court appropriately deferred to trial counsel's strategic decision not to call Collins as a witness.

We conclude it was hardly unreasonable for trial counsel to determine that it was in her client's interest to avoid calling a witness with a gang affiliation[3] and whose testimony would alert the jury that defendant had previously served

_____

[3] We note that defendant asserts that Collins's status as an "upper echelon" gang member somehow would have increased his credibility.

time in State Prison.  Accordingly, the PCR court properly refused to second guess trial counsel.

Furthermore, we hold it is not reasonably probable that Collins's testimony would have changed the jury's determination that defendant conspired to murder Milton.  Strickland, 466 U.S. at 694.  It bears emphasis that the State played for the jury a recorded conversation in which defendant arranged to have Maurice Pearce murder Milton.  During the recorded conversation with Pearce, defendant told Pearce he could supply him with a gun.  The two men discussed the different guns Pearce could use.  Defendant concluded that Pearce could use a lower caliber gun so long as he "finish[ed] [Milton] off, two to the head."  They also discussed the clothes Pearce would wear, that Pearce should wear two gloves during the killing, and how he would leave the scene after killing Milton.  Defendant provided Pearce with both Milton's address and his father's contact information, including his street address and telephone number.  Collins's testimony would not have undermined the incriminating value of this recorded conversation in any material manner.

C.

Defendant next contends his trial counsel was ineffective for failing to communicate with him prior to trial.   Defendant claims that he had only two or

three conversations with an investigator acting on counsel's behalf. Defendant hypothesizes that additional communication before trial would have provided the "extra push necessary to win an acquittal."

As with his claim concerning Reilly's testimony, defendant has failed to support this ineffective assistance claim with the necessary competent proofs. Defendant has not submitted an affidavit or certification establishing the extent to which counsel and defendant communicated prior to trial and establishing that additional preparation would have affected the outcome of the trial. Defendant's claim that counsel failed to communicate with him prior to trial, therefore, is yet another "bald assertion[]" unsupported by the record. Cummings, 321 N.J. Super. at 170. Furthermore, as the PCR court noted, defendant never raised to the trial judge any concern with having insufficient time to prepare with his attorney regarding any aspect of his trial strategy. We therefore agree with the PCR court that defendant has failed to establish either prong of the Strickland/Fritz test with respect to his pretrial interactions with defense counsel and her trial preparation.

### D.

We turn next to defendant's contention that his trial counsel was ineffective in the manner in which she cross-examined his wife. Defendant

acknowledges that counsel extensively cross-examined his wife concerning their personal history and her potential bias in view of the divorce proceedings. Defendant nonetheless claims counsel should have used the cross-examination to put his marriage in a more positive light by eliciting testimony that he was a "good husband." The PCR court found this argument to be absurd given that defendant was on trial for attempting to murder his wife. We agree.

Like his other ineffective assistance claims, defendant's supposition that his wife would have provided positive testimony concerning their relationship is a "bald assertion[]" unsupported in the record. Cummings, 321 N.J. Super. at 170. Defendant failed to supply an affidavit or certification in compliance with Rule 3:22-10(c) detailing the potential testimony his wife may have given concerning their marriage.

Additionally, defendant has utterly failed to overcome the strong presumption that counsel's approach to cross-examining his wife was a "sound trial strategy." Strickland, 466 U.S. at 689. The record amply supports the trial court's finding that counsel confronted defendant's wife with prior inconsistent statements and the financial benefit she stood to reap if petitioner were to be convicted of attempted murder and incarcerated. Judge Ryan concluded counsel chose a far more effective strategy of cross-examination by focusing on the

witness's financial incentive to have defendant convicted rather than trying to elicit from her that defendant had been a good and loving husband. We conclude that counsel's cross examination of his wife falls within the range of reasonable professional assistance. Ibid.

We add with respect to the second Strickland prong that it is highly unlikely, much less reasonably probable, that any favorable testimony about the marriage elicited from defendant's wife would have changed the outcome of the trial, id. at 694, especially given the recorded conversations played to the jury in which defendant is heard conspiring to murder her.

E.

We next address defendant's contention that even if trial counsel did not commit any single error at trial that by itself warrants relief, she committed multiple errors that, viewed cumulatively, are sufficient to entitle him a new trial. See State v. Jenewicz, 193 N.J. 440, 473 (2008) (recognizing that "even when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal"). We hold that defendant has failed to establish that counsel committed any error at all in discharging her professional

responsibilities, much less multiple errors whose cumulative effect would probably have changed the verdict.

Finally, defendant contends there are several factual issues in material dispute that lie outside the record, thereby warranting an evidentiary hearing. We agree with the trial court that defendant has failed to establish any of the requisite elements supporting the grant of an evidentiary hearing. R. 3:22-10(b). Notably, defendant has failed to support his PCR with any certifications or affidavits, rendering many of his arguments mere "bald assertions." Cummings, 321 N.J. Super. at 170. Without competent proofs, defendant has not established there are material issues of disputed fact that lie outside the record. Furthermore, even viewing the facts in the light most favorable to defendant, he has failed to show a reasonable likelihood of success under the Strickland test. Preciose, 129 N.J. at 463. We conclude the present evidentiary record is sufficient to deny defendant's petition for PCR. Accordingly, the PCR court did not err in denying defendant's request for an evidentiary hearing.

To the extent we have not addressed them, any additional arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19